MOORE *et al. v.* MEYER *et al.*

(*Circuit Court, S. D. Illinois.* July 6, 1891.)

ASSIGNMENT FOR BENEFIT OF CREDITORS—PREFERENCES—ILLINOIS STATUTE.

The transfer by an insolvent of substantially all his property to certain of his creditors in payment of debts to the exclusion of the others, where no instrument purporting or intended to be a deed of assignment is executed, is not an assignment within Act Ill. May 22, 1877, § 13, providing that "every provision in any assignment hereafter made in this state, providing for the payment of one debt or liability in preference to another, shall be void, and all debts and liabilities within the provisions of the assignment shall be paid *pro rata* from the assets thereof."

In Equity. Bill by George H. Moore and others against John Meyer and others to set aside certain conveyances as in fraud of creditors, and to have them adjudged to constitute an assignment.

*C. A. Babcock, William McFadden,* and *J. Sibly,* for complainants.

*Emmons & Wells, Berry & Epler, Carter & Govert,* and *L. H. Berger,* for defendants.

ALLEN, J. The bill in this case alleges that John Meyer and Moses Bachrach owned property, real and personal, describing it, and carried on the business of wholesale liquor dealers at Quincy, Ill., till on or about Monday, October 25, 1886. "That at the date and time last aforesaid the said firm of John Meyer & Co., and the individual members so aforesaid composing said company, were, and for some time prior thereto had been, insolvent." That the stock of goods had been purchased partly within 30 days, and almost entirely within 90 days, of the day mentioned in said mortgages and transfers, the indebtedness amounting to some $22,000. Complainants, Moore, Seeliger & Co., sold defendants John Meyer & Co., September 10, 1886, goods to the amount of $2,905.75, and took acceptances, payable in four months; and the Sour Mash Distilling Company, on September 18, 1886, sold them goods amounting to $1,083 taking an acceptance running the same time. That about the date of the chattel mortgages the defendants made divers and sundry

transfers to one or more of the defendants, to Henry F. Ricker, cashier of the Ricker National Bank, and to various other parties, whose names are unknown, of divers warehouse receipts, representing goods and liquors in bond warehouses, situated in Louisville, Kansas City, and elsewhere. "That the transfers last named were so made in settlement and discharge of, or else as security for, an indebtedness to some of the defendants, or to the transferees of said warehouse receipts." That about this time John Meyer & Co. owned or were interested in a chattel mortgage upon a stock of goods in Kansas City, which they assigned or transferred and turned over either in payment of or by way of security for an alleged indebtedness to the defendants Hoffheimer Bros. That about the same time John Meyer & Co. transferred or assigned to the Ricker National Bank of Quincy, or to Henry F. J. Ricker, its cashier, a stock of goods and liquors in Louisville, Ky., which they owned, or in which they were interested, and about the same time said firm of John Meyer & Co. made over, assigned, or transferred to some one or more of the defendants a stock of goods owned by John Meyer & Co., at Lincoln, Neb. That the property described in the two chattel mortgages comprised substantially all the stock in trade of John Meyer & Co. in their store at Quincy, consisting almost entirely of purchases made from vendors whose claims for their goods sold to defendants had not yet become due; and that the amount of indebtedness of real and *bona fide* creditors named in said respective chattel mortgages is large enough to exhaust the entire value of the property included in said mortgages. That on or about the 22d day of October, 1886, the said John Meyer & Co., as partners, executed their two several chattel mortgages,—one to Hoffheimer Bros., Jacob Goldstein, and Wolf Schroder, and the Ricker National Bank of Quincy, as mortgagees; the other to Henry Root, Joseph Stern & Sons, S. Kingsbacker & Bro., and Frederick Bougert. That on October 23, 1886, at 5 P. M., these mortgages were filed for record. That on the 24th or 25th of October the mortgagees took possession, and placed in charge and control one La Fayette Blair, who had formerly been an employe of John Meyer & Co. as book-keeper. That on the 21st day of October, 1886, the said John Meyer and wife and Moses Bachrach and wife made a mortgage deed to the Ricker National Bank, conveying their real estate, etc. That this real estate was mortgaged for its full value. That about this time John Meyer & Co. assigned or made over to defendants, or some of them, many of their outstanding open accounts and receivables. "That by the various mortgages, both chattel and real, and the transfers, assignments, and conveyances aforesaid, the whole property, or substantially the whole property, of said firm of John Meyer & Co., and the individual members of said firm, was made over to and parceled out to a few favored creditors of said firm, and of the individuals composing it, and a preference was thereby given to said last-named creditors; and your orators state and show that such acts and doings as are last above mentioned, and the preferences last above named, are in contravention of the assignment laws of Illinois and of the policy of said laws last named, and that the said conveyances, mortgages, both chattel and

real, and said transfers last above named, were made by said John Meyer & Co., and the said John Meyer and Moses Bachrach, composing said firm, with the intent on their part to make a transfer and assignment of their whole estate to a few favored creditors, viz., to the defendants, with preferences to them, and at a time when the said Meyer and Bachrach had made up their minds and knew they could not continue in business any longer, and that the moment of their financial collapse had come, and with the intent on their part to make such assignment with preferences, so as to avoid, if they could, the laws of Illinois relating to voluntary assignments, and prohibiting preferences in such assignments. That said John Meyer and Moses Bachrach never made any provision for the creditors hereinbefore mentioned as those from whom the goods in the said two chattel mortgages described were purchased, and whose accounts and acceptances did not become due until after the making of said chattel and real-estate mortgages, but left said last-named creditors unprovided for and unpaid. That the indebtedness to the defendants of said John Meyer & Co., or said John Meyer or Moses Bachrach, if any such exist, is in the main and in general of long standing, and that little or no part thereof accrued or arose out of the purchases of the goods, wares, and merchandise described in and conveyed by the respective chattel mortgages, of which Exhibits A and B, hereto attached, are copies, but that the original consideration of said last-mentioned indebtedness, or nearly all thereof, accrued long before said goods, wares, and merchandise last named were purchased by said John Meyer & Co. The bill further charges that the defendants composing the firm of Hoffheimer & Bro., or one or more of them, are related to John Meyer or Moses Bachrach, and prays for a full discovery of the relationship; also that many of the debts to the mortgagees were not due at the time the mortgages were executed, but that the same were taken up and treated as due in advance of the maturity thereof, and that these mortgages were made with the understanding that the mortgagees would take possession of the property covered by the mortgages; that the execution of the said notes and five mortgages, and the other transfers and assignments mentioned, were and are a scheme devised and arranged by and between said Meyer and Bachrach on the one hand and the said mortgagees on the other to transfer to the said mortgagees all the tangible and available property of said firm of John Meyer & Co., and of the individual members of said firm, to pay and in payment of the indebtedness of said firm or its individual members to said mortgagees, whether the same was due or not, and prefer said mortgagees as creditors of said firm or its individual members, and hinder and delay other creditors, and prevent the collection by complainants and other creditors not among said mortgagees of their just claims against said firm of John Meyer & Co.; and that the execution of said mortgages was in effect, and was devised and intended by both mortgagors and mortgagees to be, an assignment of all the property and effects of said firm and the individual members thereof to said mortgagees as preferred creditors, and an avoidance or an attempt to avoid the provisions of the statute of the state of

Illinois touching assignments for the benefit of creditors, and the provisions thereof prohibiting the preferment of creditors. The bill further charges that this design was participated in and shared by the several respective defendants, or at least by such of them as received by said mortgages and transfers, or any of them, a preference; and that the said respective defendants so by said transfers, conveyances, and chattel and real-estate mortgages, respectively, preferred, knew at the time of receiving such preferences that the said firm of John Meyer & Co. was insolvent; and it is further averred that said respective defendants to whom said respective assignments, conveyances, and chattel and real-estate mortgages were respectively made, deny that the same, singly or together or otherwise, constitute in law and legal effect a voluntary assignment for the benefit of creditors of said John Meyer & Co.; and also deny that any creditors of said John Meyer & Co., other than those named in said respective assignments, transfers, and mortgages, have or can have any interest in the property therein conveyed, assigned, or transferred, or mortgaged, or in the proceeds thereof. A supplemental bill filed in the case charged the sale of the property by the mortgagees, and prayed that they account for the proceeds of such sale.

There is no allegation or proof that the defendants Meyer and Bachrach, or either of them, ever made what purported to be or was intended for a deed of assignment under the voluntary assignment laws of Illinois. The prayer of the bill is that each of the chattel mortgages above mentioned, and each assignment, transfer, and conveyance of accounts and warehouse receipts and stock of goods in trade and other property mentioned and referred to may be set aside as in fraud of the creditors of the said John Meyer & Co. and of the individual members of said firm; that said chattel and real-estate mortgages, and each of them, and said assignments and conveyances of property and warehouse receipts, transfer of accounts, stocks of goods, and property made, be adjudged to constitute an assignment for the benefit of all the creditors of said John Meyer & Co. and the creditors of the individual members of said firm, and that the preferences by said mortgages, transfers, conveyances, and assignments given may be declared and decreed to be null and void, and the property thereby conveyed be adjudged to be held under said respective mortgages and transfers in trust by the respective grantees and transferees or assignees, for the general creditors and all the creditors of said firm of Meyer & Co., *pro rata*, equally; as also, if the facts make it proper, the individual members of said firm. Subsequently a number of other creditors intervened and became parties. A demurrer to the amended bill was argued and overruled by the court, April 1, 1889. Answers and replications being filed, much testimony was taken, tending on one side to support the bill, and on the other to disprove the charges of fraud it contained.

The theory on which the bill was filed is that the several transfers and mortgages, real and chattel, made by John Meyer & Co. in October, 1886, when the firm was in failing circumstances, amounted to an assignment within the purview of the statutes of Illinois and the decisions

of the courts of this state on the subject of assignments for the benefit of creditors, and that the mortgages and transfers, including substantially all the property and assets, were in effect preferences of certain creditors over the others. The thirteenth section of the assignment act referred to declares that—

"Every provision in any assignment hereafter made in this state providing for the payment of one debt or liability in preference to another shall be void, and all debts and liabilities within the provisions of this act shall be paid *pro rata* from the assets thereof."

This section must be construed liberally for the accomplishment of the object or purpose in view on the part of the legislature at the time of the passage of the law; and what this object or purpose was is probably the underlying question in this case. It is proper to inquire, then, does the act contemplate the regulation of the conduct, for the benefit of creditors, of insolvent debtors, treating everything preferential as void; or is its scope limited to assignments not only contemplated, but executed? The latter view would seem to be the sound one, and to be upheld by authority. This section 13 of the Illinois assignment law is copied from, or at least is in the precise words of, section 39 of the statutes of Missouri concerning assignments, passed in 1855, and remaining on the statute-books of that state until 1865. The supreme court of Missouri in *Shapleigh* v. *Baird*, 26 Mo. 322, and *Crow* v. *Beardsley*, 68 Mo. 435, construing the section, reach conclusions in harmony with the one expressed in this case. Numerous decisions of the several states to the same effect upon analogous statutes might be cited, going in the direction—indeed, to the extent—that legislative acts, such as the one now being considered, contemplate no such thing as a constructive assignment. It is important, however, to push the inquiry into the state of Illinois, and ascertain the holding of the highest judicial tribunal of this state in construing the particular section of the assignment law in question; for the states must be permitted to construe their own constitutions and statutes. In cases where no construction has been given to a statute by the state courts, and the federal courts are first called upon to interpret it, a subsequent and different construction by the state court would not necessarily cause the construction first given by the United States court to be abandoned, and that of the state court adopted or acquiesced in. In such a case, however, the desire for harmony and the strong feeling of comity would generally induce a disposition on the part of the federal courts, to avoid conflict with well-considered decisions of the state courts, and acquiesce in them if there are fair and reasonable grounds for doing so. The supreme court of Illinois has in a number of cases had this voluntary assignment law under consideration, and has repeatedly passed upon this identical thirteenth section. One of the best considered of these cases is *Preston* v. *Spaulding*, 120 Ill. 208, 10 N. E. Rep. 903. In this case, which was decided March 22, 1887, it was held that, after the debtors had made up their minds to make an assignment of their property for the benefit of their creditors, all conveyances, transfers, and other dispositions of their property or assets, made in view of their intended gen-

eral assignment, whereby any preference was given, would in a court of equity be declared void, and be set aside, the same as though incorporated in the deed of assignment itself.    In regard to this feature of the case the court simply held that the preferential payments, conveyances, and confessions of judgment to relatives and favorite creditors, made in view of an intended assignment, which almost immediately followed, were in fraud of the statute, and that the property so transferred passed under the deed of assignment to the assignee in trust for the benefit of all the creditors.    No color or encouragement can be found in the decision of this case for the idea of constructive assignments, or that this series of preferences, transfers, and conveyances, all made by insolvents in view of an early assignment by the failing debtors, would, in and of themselves, have constituted an assignment.    In the case of *Weber* v. *Mick*, 131 Ill. 520, 23 N. E. Rep. 646, decided January 21, 1890, the court, alluding to the voluntary assignment act passed in 1877, said:

"The subject-matter of the act was limited to 'voluntary assignments,' and even if it had contained express provisions attempting to deal with or regulate involuntary assignments, or any subject other than the one embraced in the title, such provisions would have been void under section 13, art. 4, of the constitution. For the same reason it must be held that every attempt to apply the act, or any of its provisions, by construction to any subject other than voluntary assignments, must be wholly unavailing."

In speaking of chattel mortgages executed by the failing debtor, the same court proceeds to say:

"It is clear, then, that they [the chattel mortgages] did not constitute valid assignments for the benefit of creditors within the meaning of the statute; * * * that they were merely chattel mortgages executed for the sole benefit of the mortgagees, and creating no trust in favor of any of the creditors of the mortgagor."

And in *Farwell* v. *Nilsson*, 133 Ill. 45, 24 N. E. Rep. 74, where the supreme court of the state adopts the opinion filed in the case by Judge MORAN of the appellate court, it is said:

"We have no involuntary assignment, and we know of no principle of law operative in this state that limits or controls an insolvent debtor in the distribution of his assets, provided they are applied in discharge of *bona fide* debts."

And, again, the court says:

"The statute relating to the assignment by debtors for the benefit of creditors, prohibiting preferences in such assignments, has no application to a case of this kind. Notwithstanding that statute, a debtor may pay one creditor in full, either in money or by sale of his property. That act applies only to conveyances of property to an assignee or trustee, in trust, to convert the same into money for the benefit of the creditors of the assignor, which can now only be made under that law."

And further:

"To give to this act the scope and effect here contended for would be to far exceed the legislative intent. The act contemplates no such thing as a constructive assignment; and that, before the county court gets jurisdiction, an actual assignment must be made and recorded, as required by the act."

In the last decision of the Illinois supreme court (June 10, 1891) upon the question, (*Farwell* v. *Cohen*, published in 28 N. E. Rep. 35,) upon a careful consideration of all the various provisions of the voluntary assignment act of 1877, the court maintained its former constructions given to the act, but holding, upon a question not before presented, that a voluntary assignment, which is upon its face a partial assignment, and which, in fact, does not purport to transfer substantially all the property of the debtor, and which contains no general terms descriptive of the property, is not, by force of the act, converted into a general assignment of all the property of the debtor that is not exempt by law; that this partial assignment is, if otherwise valid, a voluntary assignment, to be governed by and administered under the provisions of the act of 1877. It will thus be seen that the highest court in the state of Illinois, where the statute originated, has uniformly held that the word "assignment" had, before it was used in the section of the statute under consideration, a well-defined meaning, and that it has no different meaning in the act now; that it is a transfer by an instrument voluntarily executed, and without compulsion of law, by a debtor, of his property to an assignee in trust, to apply the same, or the proceeds thereof, to the payment of his debts, and return the surplus, if any, to the debtor,—a construction, it would seem, fairly consistent with the purpose of the legislature at the time of the passage of the law.

Counsel for complainants have pressed upon this court with much earnestness and confidence the case of *White* v. *Cotzhausen,* 129 U. S. 329, 9 Sup. Ct. Rep. 309. That case is not regarded as decisive of this. It was there held, referring to the Illinois voluntary assignment act, that the surrender by an insolvent debtor of the dominion over his entire estate, with an intent to avoid the operation of the act, and the transfer of the whole, or substantially the whole, of his property to a part of his creditors, in order to give them a preference over other creditors, whether made by one instrument or more, or whatever their form might be, operated as an assignment under that act, the benefit of which might be claimed by any unpreferred creditor who would take the proper steps in a court of equity to enforce the equality contemplated by it. And *Preston* v. *Spaulding, supra,* is cited as "the leading case on this subject in the supreme court of Illinois." That case has already been referred to in this opinion as a well-considered one. It held:

"If one intends to make a conveyance of all his property for the benefit of his creditors convey a part one day, a part the next, and so proceed until all his property is appropriated according to the original intention, precisely the same end is accomplished as if a general assignment had been made at the outset; and the law must visit the same penalty upon preferences in an assignment accomplished by these successive acts as if it had been done by a single deed."

It will be remembered that in the *Preston-Spaulding Case* there was finally a general assignment by deed, and it was because of this consummation that the court made the previous transfers and conveyances a part of the completed transaction. Probably nothing beyond this was

intended to be decided in *White* v. *Cotzhausen.* Certainly it is not apparent that the federal court intended to give a different construction to the section of the statute than the one placed upon it by the state court, but the presumption is very strong that the holding of the latter was adopted by the former as entirely satisfactory, and meeting fully the mischief intended to be remedied by the Illinois legislature. If at the time *White* v. *Cotzhausen* was decided—January 28, 1889—the Illinois supreme court had made no decision construing this statute, or had made a decision giving it the construction contended for by complainants' counsel in this case, or if, even, since that time the Illinois courts had yielded to such a construction, I might feel more embarrassment. But no such attitude is presented. Federal courts undoubtedly have an independent co-ordinate jurisdiction with the state courts in the administration of state laws, and where the law has not been settled by the latter it is the clear right and duty of the former to exercise their own independent judgment. Where it has been settled, however, by the state courts, the federal courts are careful in avoiding any unseemly conflict, and desirous, in the spirit of comity, to act in harmony with state courts in the construction of their own laws. From the views herein expressed it follows that the bill must be dismissed; and accordingly it is so decreed.