HENRY W. K. CUTTER *et al vs.* JAMES R. POLLOCK *et al.*

Opinion filed July 23rd, 1894.

**Preference by Insolvent Debtor.**

> An insolvent debtor may pay or secure one creditor in preference to another, except in cases where he executes an assignment for the benefit of his creditors.

**Mortgage on Entire Stock Not An Assignment for Benefit of Creditors.**

> Such a debtor, in this case, executed three chattel mortgages on substantially all of his property, securing certain creditors to the exclusion of others. The mortgagees at once took possession, and commenced foreclosure of the mortgages. *Held*, even assuming that the debtor himself knew that the consequence of giving the mortgages would be to prevent his continuing his business, that such transactions did not constitute an assignment for the benefit of creditors, within the meaning of § 4660, Comp. Laws, rendering void all preferences contained in such an assignment. *Straw* v. *Jenks*, 43 N. W. 941, 6, Dak. 414, overruled.

**Receiver—Fees—How Taxed as Costs.**

> When a receiver is appointed in an action, and continues to act as receiver down to the time of final judgment, the court should embody in its decision and final judgment all matters relating to the receiver's fees and expenses; how they should be paid,—whether out of the funds in his hands, or by the parties to the action; and whether, if paid out of the funds in the hands of the receiver belonging to one party, the other should not be compelled to made good this depletion of the fund in whole or in part. *Held* error for the court, without investigating and settling such matters, to direct that all of the receiver's fees and expenses should be taxed as costs against the unsuccessful party to the suit.

Appeal from District Court, Cass County; *McConnell*, J.

Action by Henry W. K. Cutter and others against James R. Pollock and others to declare certain property a trust fund to be distributed proportionately among all the creditors of James R. Pollock, who had executed chattel mortgages on such property to certain of his creditors. Pending the action a receiver was appointed. From a judgment for defendants, and directing the fees and expenses of the receiver, which were not settled by the court, to be taxed by the clerk as costs, and inserted in the judgment, plaintiffs appeal.

Reversed.

*Newman, Spalding & Phelps*, also *Bartlett & Lovell*, for appellant.

The record shows that at the time of making the chattel mortgages described in the findings of fact, the defendant Pollock had determined to quit his business and yield dominion of substantially all his estate for the benefit of the creditors mentioned in these mortgages and the court should have so found.   Hayne on New Trials § § 239, 240 and cases cited.   *Gull River Lumber Co.* v. *School ·District*, 1 N. D. 509, (48 N. W. Rep. 427.)   If at the time of the execution of the mortgages in question the defendant Pollock had the intention to quit business, and yield dominion over, and surrender substantially all his property for the benefit of the creditors named in the mortgages, then the transaction was an assignment and void under the statute.   (Section 4660 Comp. Laws,) and the estate became *eo instanti* a trust fund to be administered in equity.   *Straw* v. *Jenks*, 6 Dak. 414, 43 N. W. Rep. 941; *White* v. *Cotzhausen*, 129 U. S. 329, 9 S. C. Rep. 309; *Wyman* v. *Matthews*, 53 Fed. Rep. 678, and the holding in these cases has been followed substantially in *Marshall* v. *Livingston Nat. Bank*, 28 Pac. Rep. 312; *Richardson* v. *Mississippi Mills*, 11 S. W. Rep. 960; *Colyer* v. *Wood*, 4 So. Rep. 840; *State* v. *Dupuy*, 11 S. W. Rep. 964; *Wilkes* v. *Walker*, 23 S. C. 108; 53 Am. Rep. 706; *Meinhard* v. *Strickland*, 7 S. E. Rep. 838; *Farwell* v. *Cohen*, 28 N. E. Rep. 35; *Winner* v. *Hoyt*, 28 N. W. Rep. 380; *Bohns* v. *Carter*, 31 N. W. Rep. 381; *Clapp* v. *Ditman*, 21 Fed. Rep. 15; *Perry* v. *Corby*, 21 Fed. Rep. 737; *Martin* v. *Housman*, 14 Fed. Rep. 160; *Kellogg* v. *Richardson*, 19 Fed. Rep. 70; *Clapp* v. *Nordmeyer*, 25 Fed. Rep. 71; *Freund* v. *Yoegerman*, 26 Fed. Rep. 812.

The fees and expenses of the receiver are no part of the costs taxable by the clerk.   Section 5189, Comp. Laws.   The receiver must be paid out of the funds realized.   *Radford* v. *Folsom*, 55 Ia. 598; *Jaffrey* v. *Raab*, 33 N. W. Rep. 337.

*Pollock & Scott* and *Chas. A. Pollock*, for respondent.

The  case of *Straw* v. *Jenks* should have no binding force, more than would a decision of any court from a foreign ⸲state.   The South Dakota court has refused to follow it.   *Sandwich Mfg. Co.*

v. *Max*, 58 N. W. Rep. 14. If the intent of the debtor is merely to secure his debt to one or more of his creditors and the conveyance is not intended as an absolute disposition of his property, but he reserves to himself a right therein, the conveyance will be treated as a mortgage, even though the debtor is insolvent at the time and it (the mortgage) covers all his property and but a portion of his debts are secured by it. Cobby on Chat. Morts. 101; *Caldwells Bank* v. *Crittenden*, 66 Ia. 237, 23 N. W. Rep. 646; *Kohn* v. *Clement*, 58 Ia. 589, 12 N. W. Rep. 550. A party in failing circumstances may in good faith prefer creditors. Note to 26 Am. Dec. 584. The giving of a chattel mortgage to secure a bona fide debt is not considered an assignment as provided in § 4660 Comp. Laws, and is therefore not in conflict with the provisions prohibiting preferences. *Van Patten* v. *Thompson*, 34 N. W. Rep, 763; *Aulman* v. *Aulman*, 32 N. W. Rep. 240; *Kohn Bros.* v. *Clement*, 12 N. W. Rep. 550; *Ingram* v. *Osborne*, 35 N. W. Rep. 304; *Phillips* v. *Caldwell*, 1 Pac. Rep. 329; *Ford* v. *Nye*, 40 Kan. 655; *Cundet* v. *Lahiver*, 16 Kan. 527; *Waterman* v. *Silberger*, 2 S. W. Rep. 578.

The section of our statute refers to preferences attempted to be given in assignments made under the act. *Waterman* v. *Silberger*, 2 S. W. Rep. 578; *Gilbert* v. *McCorckle*, 11 N. E. Rep. 298; *Sticks* v. *Sadler*, 9 N. E. Rep. 905; *Magovern* v. *Richard*, 3 S. E. Rep. 340; *Campbell* v. *Colorado Coal Co.*, 10 Pac. Rep. 248; *Bank of Montreal* v. *Potts, Salt & Lumber Co.*, 51 N. W. Rep. 512; *Brown* v. *Grand Rapids Parlor Furniture Co.*, 58 Fed. Rep. 286; *Hushisher* v. *Higman*, 48 N. W. Rep. 573; *Weber* v. *Childs*, 51 N. W. Rep. 543; *Dana* v. *Stanford*, 10 Cal. 269; *Warner* v. *Littlefield*, 50 N. W. Rep. 721; The receivership was found improper and the expenses thereof properly taxed to plaintiff. The costs and expenses of unwarranted proceedings should be paid by the parties instituting such proceedings. High on Receivers § 796, p. 658; *Howe* v. *Jones*, 23 N. W. Rep. 378; *Lammon* v. *Giles*, 13 Pac. Rep. 417; *French* v. *Gifford*, 31 Ia. 428.

CORLISS, J. This case involves a question of statutory construction. The contention on the part of the plaintiffs and appellants is that the transaction to which we will refer constituted an assignment for the benefit of creditors containing preferences, and that therefore the transactions are without any other legal effect than to make the property to which they relate a trust fund to be distributed proportionately among all creditors of the owner of such property. The plaintiffs claiming to be creditors of James R. Pollock, commenced this action in equity to have the property referred to declared a trust fund, under the provisions of § 4660, Comp. Laws. That section provides as follows: "An insolvent debtor, may, in good faith, execute an assignment of property to one or more assignees, in trust towards the satisfaction of his creditors, in conformity to the provisions of this title; subject, however, to the provisions of this Code relative to trusts and to fraudulent transfers, and to the restrictions imposed by law upon assignments by special partnerships, by corporations or by other specified classes of persons; provided, moreover, that such assignment shall not be valid if it be upon, or contain any trust or condition by which any creditor is to receive a preference or priority over any other creditor; but in such case the property of the insolvent shall become a trust fund to be administered in equity, in the District Court, and shall inure to the benefit of all of the creditors in proportion to their respective claims or demands." Pollock was a merchant engaged in business at Casselton, in this state. October 2, 1889, he executed three chattel mortgages upon his stock of goods and his store fixtures to secure claims held against him by the defendants Straw, Ellsworth Manufacturing Company, Eveline Pollock, and the Cass County Bank. These mortgages were executed and delivered to these defendants, respectively, and were successively filed for record in the office of the reigister of deeds of Cass County, N. D., the same day. They were all executed as part of one transaction. The value of the mortgage property was $12,000. The debts so secured did not amount to $7,000. While it appears

from the record that Pollock owned at the time some other property, we will assume for the purposes of this case that these mortgages covered substantially all of his property not exempt from execution. Pollock appears to have been insolvent at this time. A few hours after these mortgages were given and delivered, the mortgagor turned over all the mortgaged property to the mortgagees, who at once proceeded to foreclose the mortgages by advertising the property for sale thereunder. Each contained a provision that the mortgagee might immediately take possession of the mortgaged property. While these foreclosure proceedings were being had, the plaintiff's instituted this action, and had a receiver appointed to take and hold possession of the mortgaged property or its proceeds pending the action. Judgment having been rendered against the plaintiffs, adjudging that the mortgages were valid liens upon the property, and that plaintiffs had no right or interest in the mortgaged property, the plaintiffs have appealed to this court from such judgment.

It is here urged that the facts of this case bring it within the decision of the territorial Supreme Court in *Straw* v. *Jenks,* 6 Dak. 414, 43 N. W. 941, and that that decision should be followed by this court. We are by no means satisfied that Pollock, when he executed these mortgages, had considered that he would no longer continue in business, and had decided to yield up dominion of his entire property. But we will again assume a state of facts as favorable to plaintiffs as the record will justify. We will take it for granted that Pollock intended to give these mortgagees a preference, knowing that the consequence of the execution of such mortgages, and the abandonment to the mortgagees of the possession of the mortgaged property, would be to force him to abandon his business. But it is very clear that he did not intend to surrender control over the mortgaged property, except so far as was necessary to accomplish the payment of the mortgagees named therein. The mortgages created mere liens. The legal title to the property remained in the mortgagor. After these

preferred creditors had been paid, the possession of the remaining property would revert to him; and at all times any of his creditors could have levied upon his interests in the mortgaged property, and sold it to pay such creditors' claim. To assert that a mortgagor who has created a mere lien on property (especially where, as in this case, the value of the property is largely in excess of the claims secured by the mortgage) has parted with all control over the property, is to ignore the character and legal effect of the instrument under which he has surrendered possession. Despite the mortgage, it is still his property. He may sell it. He may mortgage it. It may be seized for his debts. How such a transaction can be held to be an assignment for the benefit of creditors is inexplicable to us. An assignment for the benefit of creditors creates a trust, vesting the legal title in the assignee, and placing the property beyond the control of the assignor or the reach of any of his creditors, except as they have a right, under the assignment, to share in the distribution of the assigned estate. It is for this reason that assignments for the benefit of a portion of the assignor's creditors have been held void under the statute invalidating all transfers which delay creditors. In such a case the debtor would, if the transaction were valid, be able to place for a time his property beyond the reach of the creditors who have no rights under the assignment, because that portion of the assigned estate which would come back to him after the trust had been executed would, during the existence of the trust, be withheld from the reach of such creditors. But a mortgage creates no trust. It creates a mere lien. It is in no respect assimilated to an assignment for the benefit of creditors, and yet, by the express terms of the statute, it is in only such an assignment that the law condemns a preference. The commom law recognized the right of a debtor to secure or pay one creditor in preference to all others. The general rule is embodied in our statute. Section 4654, Comp. Laws, declares that "a debtor may pay one creditor in preference to another or may give one creditor security for the payment of his demand in preference to another." Section 4660

takes a certain class of transactions out of this general rule. But we must not lose sight of the fact that preference is the rule in this jurisdiction, and that he who questions the right of a debtor to make a preference must lay his hand upon the law which takes away this right in a given case. The legislature has seen fit to draw the line at instruments which constitute assignments for the benefit of creditors. Such instruments must not contain preferences. If they do they are void, and the property becomes a trust fund for the equal benefit of all creditors. But this statute does not attempt to prevent the giving of security to one or any number of creditors in preference to others, and § 4654, in terms, allows this to be done. To hold that a chattel mortgage is an assignment for the benefit of creditors, that the creation of a mere lien is the creation of a trust, that retaining title to property is surrendering all control over it, displays an utter disregard of well settled legal distinctions. To extend the construction of the statute to embrace a transaction of the character disclosed by this record, under the specious pretext of following the spirit of the law, is downright unsurpation of legislative functions. To us the fallacy of the reasoning in the case of *Straw* v. *Jenks*, and in the other cases in which the rule there enunciated is laid down, is in the assumption that preference is the exception, and not the rule, whereas the general rule permits preference, and he who claims that a preference is illegal must bring the case within the particular exception embodied in § 4660. The statute does not declare that one who has decided to apply all his property in payment of his debts, as far as it will apply, must distribute it among his creditors ratably. This he must do if he executes a general assignment. But the law does not compel him to make a general assignment, and it does permit him to pay or secure any creditor in preference to another. Of course, this statute allowing preferences relates to insolvent debtors. When a debtor is solvent there can arise no question of preference. It is only when he is insolvent that the right to prefer is of any value to him, or to the creditor preferred. An insolvent debtor may therefore

pay one creditor in preference to others, although it takes every dollar of his property to make the payment. It is only when he executes an assignment for the benefit of all of his creditors that he cannot discriminate and favor. Then he must place all creditors on an equal footing. If he does not, the law and the courts will do it for him. The argument in *Straw* v. *Jenks*, and similar cases is that the object of the law will be defeated if the rule there enunciated is not adopted. This reasoning assumes that the object of the statute is something other than it is therein expressed to be. The purpose of the law, if the language in which that purpose is couched is to be our guide, is that the general rule permitting preferences shall be abrogated in a single class of cases, *i. e.* where a debtor executes such an assignment for the benefit of creditors as the act embraced in the title in which § 4660 is found refers to. An analysis of this act (§ § 4660, 4680, both inclusive) discloses a legislative intent therein to deal with assignments for the benefit of all the assignor's creditors. In such an instrument there shall be no preference. In every other transaction the debtor may prefer. The case of *Straw* v. *Jenks*, has been overruled by the South Dakota Supreme Court in an opinion whose logic, to our mind, is unanswerable. *Manufacturing Co.* v. *Max*, 58 N. W. 14. *Straw* v. *Jenks* merely followed *White* v. *Cotzhausen*, 129 U. S. 329, 9 Sup. Ct. 309. This case merely followed what the court regarded as the rule in Illinois, as laid down in *Preston* v. *Spaulding*, 120 Ill. 403, 10 N. E. 903. In a later case the Federal Supreme Court has ruled differently in a case arising in Missouri, following a different rule adopted in that state. *Union Bank of Chicago* v. *Kansas City Bank*, 136 U. S. 235, 10 Sup. Ct. 1013. In this case Mr. Justice Gray expressly declares that all the court intended to do in *White* v. *Cotzhausen*, was to construe the Illinois statute in accordance with what it understood to be the decision of the Supreme Court of that state. That the Federal Supreme Court, in *White* v. *Cotzhausen*, did not correctly interpret the decision of the Illinois Supreme Court in *Preston* v. *Spaulding*, is evident

from later decisions of that court. See *Farwell* v. *Nilsson*, 133 Ill. 45, 24 N. E. 74; *Weber* v. *Mick*, (Ill. Sup.) 23 N. E. 646. And see *Moore* v. *Meyer*, 47 Fed. 99; *Schroeder* v. *Walsh*, 120 Ill. 403, 11 N. E. 70. There is nothing in *Farwell* v. *Cohen*, (Ill. Sup.) 28 N. E. 35, opposed to the views expressed in *Farwell* v. *Nilsson*. In many of the cases there was in fact a general assignment for the benefit of creditors executed. When a debtor, with the purpose of executing such an assignment, makes transfers of property or gives security or pays money before executing the assignment, for the express purpose of evading the provisions against preferences,—when his purpose, known to the favored creditor, is to accomplish by independent instruments what could not be accomplished in the assignment itself,—and, thus deliberately attempting to evade the law, thereafter executes a general assignment for the benefit of all the rest of his creditors, it is possible that the instruments giving the preferences should be regarded as part of the assignment, and that, therefore, the preference should be held to be contained in the assignment itself, and consequently of no effect. But in such cases the transactions ought not to be too far apart, and certainly the preferred creditors should be proven to have had knowledge of the debtor's purpose to make an assignment at the time of giving the preferences. See, in this connection, *Manning* v. *Beck*, 129 N. Y. 1, 29 N. E. 90; *Banking Co.* v. *Fuller*, 110 Pa. St. 156, 1 Atl. 731.

We hold that these chattel mortgages did not constitute a general assignment for the benefit of creditors, and that the debtor had a perfect right to execute them to the creditors therein named, to secure his obligations to them. It therefore followed that the mortgaged property was not a trust fund in which all the creditors of defendant Pollock had an interest, but was his property, on which there were mortgage liens held by such of the defendants as were named in the three mortgages as mortgagees. As sustaining our conclusions, we cite *Manufacturing Co.* v. *Max*, (S. D.) 58 N. W. 14; *Hargadine* v. *Henderson*, 97 Mo. 375, 11 S. W. 218; *Union Bank of Chicago* v. *Kansas City*

*Bank*, 136 U. S. 235, 10 Sup. Ct. 1013; *May* v. *Tenny*, 148 U. S. 60, 13 Sup. Ct. 491; *Farwell* v. *Nilsson*, 133 Ill. 45, 24 N. E. 74; *Weber* v. *Mick*, (Ill. Sup.) 23 N. E. 646; *Schroeder* v. *Walsh*, 120 Ill. 403, 11 N. E. 70; *Tompkins* v. *Hunter*, (Sup.) 24 N. Y. Supp. 8; *Cross* v. *Carstens*, (Ohio) 31 N. E. 506; *Moore* v. *Meyer*, 47 Fed. 99; *Crow* v. *Beardsley*, 68 Mo. 435; *Gilbert* v. *McCorkle*, (Ind. Sup.) 11 N. E. 296; *Waterman* v. *Silberberg*, (Tex. Sup.) 2 S. W. 578; *Warner* v. *Littlefield*, (Mich.) 50 N. W. 721; *Sheldon* v. *Mann*, (Mich.) 48 N. W. 573. Other cases might be cited, but this question has been so often discussed, and the decisions so many times reviewed, that we feel that it would be a waste of time for us to travel again over the same ground. With the exception of *Straw* v. *Jenks*, *White* v. *Cotzhausen*, and a few other cases, all of the decisions which have struck down preferences have been in cases in which it appeared that an assignment for the benefit of creditors was in fact executed; and the court in those cases held that the instruments creating the preferences were so connected in point of time, and by the circumstances of the transactions, with the subsequent general assignment, that they were a part of it, and that, therefore, the preferences were, in contemplation of law, embodied in the assignment itself. Such, among others, were the cases of *Preston* v. *Spaulding*, 120 Ill. 208, 10 N. E. 903; *Berger* v. *Varrelmann*, 127 N. Y. 281, 27 N. E. 1065; *Clapp* v. *Nordmeyer*, 25 Fed. 71; *Burnham* v. *Haskins*, (Mich.) 44 N. W. 341.

The judgment of the District Court was therefore right, in so far as it adjudged that the mortgaged property or its proceeds, in the hands of the receiver, should be turned over to the defendants entitled thereto under such mortgages. But the judgment is attacked by this appeal in another particular. On motion of the plaintiffs, and against the opposition of the defendants, a receiver was appointed to take possession of the mortgaged property pending the litigation. In one of its conclusions of law the court held that the fees and expenses of the receiver, which were not settled by the court, should be taxed by the clerk of the court as costs in the case, and that the amount of such costs should be

inserted in the judgment. It does not expressly appear that this was done, but we think it is a fair inference that it was done, as the judgment against the plalntiffs is for nearly $5,000 costs, and we know that no such bill of costs could have been taxed against the plaintiffs unless the fees and expense of the receiver were embodied therein. This fact strengthens the natural inference that the rule of law laid down in the court's decision was followed by the clerk, at the instance of the defendants, in taxing the costs, and entering the amount thereof in the judgment. These items, we are clear, have no place in a bill of costs. If they belong there at all, it is only as disbursements, and such disbursements the statute does not authorize to be taxed against the unsuccessful party. Section 5189, Comp. Laws. It is obvious that the clerk is not the proper officer to settle the question of a receiver's compensation. That is a judicial question. Nor should it be left to him to determine what expenses are reasonable and proper. A receiver may be so extravagant in his expenditures that it would be highly unjust to allow him credit for all the moneys he has paid out. Had such state of facts existed in this case, the clerk nevertheless must have inserted all the items of disbursements in the bill of costs, provided he was satisfied that they had in fact been incurred. Again, we think it is not the proper practice for the court to determine, in advance of a hearing on the different items of a receiver's account, that all his disbursements should be paid by one party or the other to the litigation. An examination of his account in connection with surrounding circumstances might disclose the fact that some of the items ought to be paid by the successful party. They might embrace expenditures which the successful party would have been compelled to make himself, had it not been for the receivership, but which he was saved, by such receivership, the necessity of making himself. The proper practice, where a receiver has been appointed, is for the court, after it has reached its conclusion, to order the receiver to account, on notice to all parties interested; and upon such accounting all questions can be settled,

and the findings of fact and conclusions of law relating to such matters can be embodied in the decision of the court on the merits of the action. The final decree should settle what compensation the receiver is to have, what expenditures he shall be reimbursed for; how he shall be paid,—whether out of the funds in his hands, or by one of the parties to the action, or whether part of his fees and expenses shall not be paid out of such funds and the rest by one of the parties to the case, or whether such amount shall not be apportioned so that some of it shall be paid by one party, and the balance by the other. If the receiver is allowed to pay, and reimburse himself out of the moneys in his hands, the decree should provide whether the owner of such moneys shall be indemnified by the recovery of judgment against some other party to the case for this invasion of his property. Ordinarily, it would seem to us (but we do not decide the point) that the receiver should be protected by being permitted to look to the funds in his hands to save him against loss. This appears to have been done in this case. Such rule may, however, work great hardship in particular cases; and in some instances the receiver has, on this account, been compelled to look for indemnity to the party at whose instance he was appointed. See *Weston* v. *Watts*, 45 Hun. 219; *French* v. *Gifford*, 31 Iowa, 428; *Verplanck* v. *Insurance Co.*, 2 Paige, 438. Certainly, if the court, in such a case, allows him to pay himself out of the funds, it should compel the other party to the action to make good the loss thus occasioned to the successful litigant. It is impossible for a court to make an intelligible decree when property is in the hands of a receiver, and is to be disposed of by the decree, without settling in advance the rights of the receiver with respect to compensation and expenditures, and whether he shall be allowed to pay himself out of the funds in his hands. The decree should determine whether the whole fund, or only the balance after paying the receiver, should be turned over to the successful party. In this case the court has directed the receiver to pay over every dollar that he has received, without making any deduction for his fees

and expenses, and yet the defendants are allowed to tax up as costs against the plaintiffs the amount of such fees and expenses, on the theory that they have been paid by the defendants out of their property. The court seems to have proceeded on the theory that the receiver would retain the amount of his fees and disbursements without any authority from the court so to do, and without any investigation as to the reasonableness of his charges and expenditures, and that then the clerk should tax up against the plaintiffs, as costs, whatever amount appeared to have been thus retained by the receiver, out of the funds in his hands belonging to defendants. None of these things were settled by the decree. They were left to the decision of the clerk and the receiver himself. Under the system of practice prevailing at the time the case was decided, findings were required to be made in equity cases as well as in actions at law. This must be taken into consideration in establishing the proper practice in cases like the one before us on this appeal. There can be only one final judgment, and this should settle all matters involved in the litigation, as well the rights of the receiver and the rights and liabilities of the parties to the action growing out of the receivership as the rights of the parties to the litigation on the merits of the case independently of the receivership. This final judgment must rest upon findings of fact and conclusions of law, and these, therefore, should embrace all matters essential to a full determination of the rights of the receiver with respect to compensation and indemnity, and the rights and liabilities of the parties to the suit, growing out of the payment to the receiver of his fees and expenses, as well as all matters relating exclusively to the merits of the controversy. Until all questions touching the receivership are settled, it is impossible finally to determine the rights of the parties to the case. The scope of the judgment awarding the fund to the successful party cannot be prescribed by the court until it decides whether any of this fund shall be retained by the receiver for his compensation and expenditures. The exact judgment which the victorious litigant shall recover against the

defeated suitor cannot be ascertained until the court has determined whether, in the first instance, the fund belonging to the former shall be depleted by payment of the receiver's fees and expenses, and, if so, whether the unsuccessful party shall make it good to his antagonist in whole or in part.

We conclude that it was error for the court to render final judgment without passing upon the receiver's account, and settling all matters connected with the receivership. These questions should not have been left to the clerk. The judgment is reversed, and the District Court is directed to enter a new judgment after all matters connected with the receivership have been investigated and settled. But the case will not be re-opened for a new trial on the merits. The question of the right of the defendants to the funds in the hands of the receiver is settled, subject to such modification. The District Court, without re-opening questions touching the merits, will inquire into the amount of property and money in the hands of the receiver, or for which he is properly chargeable; will ascertain what compensation is proper, what disbursements actually made were necessary; will determine whether the receiver shall be paid and reimbursed out of the fund in his hands, and what proportion of his fees and expenses ought to be borne by the plaintiffs and defendants, respectively, or whether the plaintiffs ought ultimately, or in the first instance, to pay all of such fees and expenses. All these matters should be embodied in the findings and the final judgment. We do not wish to be regarded as holding that the decision of the District Court upon these various questions will be final. It is possible they may be subject to review. There is also an appeal from an order of the District Court made on appeal from the taxation by the clerk of the receiver's fees and expenses as costs, which order affirms such taxation. The order is reversed for the reasons already stated. All concur.