## Daniel Patterson *vs.* G. A. Ward, *et al.*

Opinion filed October 29th, 1897.

**Receiver—Purchasing Trust Property.**

> While the receiver is ordinarily, and from considerations of public policy, prohibited from purchasing as an individual what he sells as receiver, or purchasing as receiver what he sells as an individual, yet where the parties consented beforehand to such transaction, where the transaction was clearly for the benefit of the trust property, and the trust property has received the full benefit thereof, the parties cannot afterwards be heard to object to such transaction.

**Personal Contracts.**

> A receiver, as an officer of the court, must stand impartial as between the parties, but he is not thereby prohibited from dealing with a party if, through such dealing, such party can receive no advantage over the other.

**Compensation of Receiver Judicial Matter.**

> Fixing the fees of the receiver is a matter of judicial determination, and is peculiarly in the discretion of the trial court, and such determination will not be disturbed in this court except in clear case of abuse.

Appeal from District Court, Traill County; *McConnell*, J.

Action by Daniel Patterson against G. A. Ward and others. From an order settling the account of H. D. Hurley, receiver, plaintiff appeals.

Affirmed.

*M. A. Hildreth*, for appellant.

*Carmody & Leslie*, for respondents.

Bartholomew, J.  This is an appeal from an order settling and allowing the accounts of H. D. Hurley as receiver in the above entitled action for the year 1894. On a motion to dismiss we held the order appealable.  6 N. D. 359, 71 N. W. Rep. 543.  The action involved two sections of land in Traill County owned by the defendants Ward and Hall.  Plaintiff claimed a mortgage on the lands, and the action was brought in April, 1894, to foreclose the mortgage. Plaintiff asked the appointment of a receiver, and on May 7th, said Hurley was duly appointed as such receiver,  He accepted

the trust, gave bonds, and entered upon the performance of his duties. The receivership covered all of said lands except 40 acres, where the buildings stood. This was reserved to the defendants. All of the land was under cultivation, and the receiver farmed it for the season of 1894, and in November rendered his account as receiver to the court. Plaintiff filed objections to certain items of the account. After much delay, and several partial hearings, the account was finally allowed substantially as filed. From this account it appears that the receiver purchased a portion of the seed grain from himself. It also appears that he hired the defendants to do certain plowing, and at harvest time employed them to do a large amount of harvesting. In the fall the receiver took his own threshing outfit, and threshed the grain. It is against the charges for these items and the claim of the receiver for fees and allowance that the objections are primarily leveled. In considering the actions of this receiver, it is proper to keep constantly in mind the circumstances surrounding his appointment and the nature of his duties. It differs widely from the ordinary appointment of a receiver of real estate, whose duties are practically limited to receiving and accounting for the rents and profits arising out of the trust property. Here the receiver was by the terms of his appointment directed to farm the lands. The appointment, as stated, did not become operative until May 7th. This was after the season for putting in crops was well advanced. The amount of land to be cropped was 1,240 acres. About 300 acres was unplowed. No preparations existed for doing the work. Seed grain must be procured, men and teams and machinery must be found, and the large amount of work incident to putting in the crop must be done in a very limited time, in order to be of any practical value. It would be extremely unlikely that any sufficient force of men and teams and machinery could be found at that date that was not already engaged for the season. So that necessarily the receiver was at a great disadvantage in hiring help, not only then, but equally so at harvesting time. It required a large amount of energy and exec-

utive ability to carry out the terms of the order of appointment. Few men would have been willing to undertake it, and still fewer could have successfully accomplished it. Necessarily, a large amount of discretion must be allowed the receiver. It is clear from the wording of the order of appointment, and the stipulation entered into at the time, that these difficulties were comprehended, and this exercise of discretion anticipated. It is urged that a receiver is prohibited from contracting with himself, or making a profit out of the trust property. We deem it well settled that a receiver will not, in ordinary cases, be permitted to purchase as an individual what he sells as a receiver, or to purchase as receiver what he sells as an individual. The law, from considerations of public policy, will not permit a person holding a fiduciary relation to surround himself with the temptations that necessarily arise where his individual interests are directly opposed to the interests of his *cestui que* trust. Nor will it permit him to make a profit out of trust funds or trust property in his hands. High, Rec. § 193 *et seq.*, and cases cited; Beach, Rec. § 270 *et seq.*, and cases cited. But, while such is the law, we deem it equally true under the above authorities, and sound upon every principle of equity jurisprudence, that, where the contracts of the receiver are clearly for the best interests of the trust property, and where they were entered into with the full knowledge and consent of the parties, and where the trust estate has received the full benefit of such contracts, the parties cannot be heard to say that compensation shall not be made therefor. In this case it is undisputed that the seed grain furnished by the receiver was furnished at a less price than like grain could be obtained for elsewhere. This was to the advantage of the trust property, and clearly did not negative good faith in the receiver; and the receiver testifies touching this seed, and a small amount of plowing done by the receiver, that the price was very reasonable, and that Mr. Patterson wished him to do the plowing and furnish the seed. And the same must be said of the threshing. The receiver was an extensive farmer in the immediate vicinity. He had on his own farm the teams,

machinery, and force to constitute a threshing outfit. When his own threshing was done, he took this outfit over to the trust property, and threshed the grain raised thereon. It is well known that there is each fall a definite and well-nigh uniform price per bushel for threshing the different kinds of grain. This threshing was done for the customary price in that locality. There was, no doubt, a margin of profit in doing the work, but whatever Mr. Hurley received in that connection he received, not by virtue of his appointment as receiver, and not as a profit on trust funds or trust property, but by virtue of the fact that he owned or controlled the teams, machinery, and men, and made a profit on their labor that did the work. We know of no law that forbade it. But, be that as it may, there is evidence tending to show that plaintiff knew that Mr. Hurley was going to do the threshing; that he consented thereto; that he was present during the whole time the threshing was being done, looking after the grain; that he boarded with the receiver, and never at any time made any objection whatever to having the work done by the receiver. He was the party beneficially interested in having the work done. He has received the benefit therefrom, and consented that the work should be done by Mr. Hurley. This brings him clearly within the principles already announced. Nor can we disturb the ruling of the District Court as to the sum allowed to Ward for harvesting. It is, of course, elementary that a receiver should stand impartial between the parties, just as much so as the court. In this case the net proceeds arising from the sale of the crops would be paid to plaintiff, Paterson, and the receiver would not be permitted to pay the defendant Ward, from the proceeds of the farm, an excessive price for labor performed in raising the crop, as that would be incompatible with his duty to be impartial. We do not understand that any objection is made to the fact that Ward was employed by the receiver, as the whole case shows that it was the expectation that Ward would be or might be so employed, provided he would do the work as well and as cheaply as other parties; and that was perfectly natural in view of the

fact that Ward was on the ground, and had in his possession the stock and machinery with which he had theretofore farmed the land. The objection urged is that the price allowed Ward was in excess of that for which others might have been employed to do the same work. Upon the question of the value of the work there is a direct conflict in the testimony. Several witnesses swear that they had done similar work, or hired similar work done, at a less price per acre. Other witnesses testify that the price allowed was a fair and reasonable price for the work performed. Be this as it may, the receiver testifies—and he is entirely undisputed— that he could not procure any one else to do the work as cheaply as Ward did it, and when we remember the disadvantageous circumstances under which the receiver went upon the labor market to procure so large an amount of work, we can readily understand how this may be true, even though ordinarily like work could be procured at a reduced figure. The court settled and allowed the compensation of the receiver at $500 for the year. As we said in *Cutter* v. *Pollock*, 4 N. D. 205, 59 N. W. Rep. 1062, this was a matter for judicial determination. It was peculiarly within the discretion of the trial court, who was much more familiar with the amount of work performed by the receiver than we can be. To us the charge appears reasonable, and there is not a word of evidence to the contrary. There is nothing in the record that warrants a reversal. The receiver applied in this court for an allowance for attorney's fees on this appeal. The receivership is not closed. Such application can be made to the lower court when the remittitur goes down.

Affirmed. All concur.