CAMDEN SAFE DEPOSIT AND TRUST COMPANY, &c..

*v.*

GEORGE R. LORD et al.

[Filed July 25th, 1904.]

1. The knowledge of an agent is imputable to his principal when it relates to the business which the agent is carrying on for the principal; but if the agent, in the course of the business in which he is employed, commits an independent fraud, for his own benefit, designedly against his

principal, and it is essential to the carrying out of the fraud that he should conceal the real facts from his principal, the presumption of constructive notice is destroyed.

2. Where the president and cashier of a trust company embarked in a partnership undertaking with an executor, who executed a mortgage to the trust company on property of the estate, the proceeds being used in the partnership venture, and not for the benefit of the estate, the knowledge of the president and cashier of the trust company of the fraudulent misapplication of the sum realized by the mortgage was not imputable to the trust company, and the mortgage was enforceable in its hand.

On bill to foreclose.

*Mr. Lewis Starr* and *Messrs. John S. Applegate & Son,* for the complainants.

*Mr. Frank Durand,* for the defendants.

BERGEN, V. C.

Three cases, each having the same title, were heard and will be disposed of together. In each the relief sought is a decree for the foreclosure of a mortgage and the sale of mortgaged premises. The three mortgages were given by George R. Lord, as executor of Mary E. Lord, to the Monmouth Trust and Safe Deposit Company, and by the receiver of that corporation assigned to the complainant. The power of the executor to make the mortgages is not disputed, and the only defence set up is that the mortgages were given by the executor to secure the payment of money borrowed by the executor, "personally and for his benefit and use in his personal enterprises and undertakings, and was so used by him;" and also that no part was used for the benefit of the estate he represented, and that the power to mortgage could only be exercised for the benefit of the estate, and not for the personal use of the executor. There is no charge of fraud or of knowledge on the part of the mortgagee corporation that the money obtained on the mortgaged security was to be misapplied, but it is sought to avoid the mortgages because the borrower did not, and did not intend, when the loan was made, to apply the proceeds to the carrying out of

the trusts established by the instrument which conferred the power to mortgage, to the knowledge of the officers acting for the mortgagee corporation, and that the corporation is to be charged with the knowledge of its agents.

The last will and testament of Mary E. Lord gives to her children all of her estate, in equal shares, to be divided between them whenever her husband, the executor, should think it fit, and when in his discretion it became necessary and advisable to do so, with full power to the executor to sell her real estate whenever, and in such manner, as to quantity or terms, he chose, and also to mortgage her lands, or any part thereof, the substantial result being that the husband had an absolute control of the property, subject only to an accounting to his children.

The first mortgage was given April 2d, 1901, to secure the payment of $2,000. No evidence was offered to sustain the answer filed in the cause of which this mortgage was the subject, and the complainant, having presented and proven its bond, mortgage and deed of assignment, is entitled to a decree, and I will so advise.

The second mortgage was given May 8th, to secure the payment of $2,500, and the third mortgage, June 4th, 1901, to secure the payment of $1,500.

On May 8th, 1901, an agreement, in writing, was entered into between Albert C. Twining, president of the Monmouth Trust and Safe Deposit Company; David C. Cornell, the cashier of the trust company, and George R. Lord, as executor of Mary E. Lord and also individually, by the terms of which a copartnership was formed for the purpose of buying and selling hogs, the business arrangement to terminate on the 8th day of October then next, and not more than $2,500 to be expended in the business.

That the capital required for this enterprise was raised on the security of the mortgage of May 8th is beyond dispute, for on that day the mortgage was given, and the sum credited by the officers of the trust company to the account of "George R. Lord, manager," and the testimony shows that it was drawn and used in the business venture referred to, and it does not

anywhere appear that the consideration for the mortgage ever passed to Lord as executor. He gave a mortgage on lands he held in trust as executor; the amount for which it was given never came to him as executor, but was accounted for to him, to his satisfaction, by the credit to his account as manager.

The real condition of affairs, as revealed by the testimony, was this: The president and cashier of the trust company, and Lord, wanted $2,500 capital for the business. Lord, as executor, owned real estate; his mortgage would answer the trust company as a voucher for the money to be credited to the account of Lord, as manager of the business, and it was never contemplated by any of the parties that the proceeds of the mortgage should in the remotest degree benefit the estate of Mrs. Lord. The misapplication of the trust fund was an illegal transaction, and it could not be successfully maintained that if either Twining or Cornell had taken the mortgage as individuals they could enforce it against the estate. Lord was doing a wrong to the knowledge of Twining and Cornell, a wrong in which they actively participated, and from the perpetration of which they expected to reap a benefit.

The only question to be considered is, can the trust company avoid responsibility for the acts of its agents in the premises upon the ground that it had no notice of the illegal transaction? That actual notice was given to the corporation is not pretended, but it is insisted that it is chargeable with constructive notice of all the facts within the knowledge of its agents, the presumption being that the agent communicated them to his principal.

That the knowledge of an agent is imputable to the principal, when such information relates to the business which the agent is carrying on for the principal, is a general rule of law well established by judicial determination, and is based by some authorities upon the presumption of actual communication, and by others upon the legal conception that principal and agent are one. This rule is, however, subject to certain exceptions, an important one being that if the agent, in the course of the business in which he is employed, commits an independent fraud

for his own benefit, designedly against his principal, and it is essential to the carrying out of the fraud that he should conceal the real facts from his principal, the presumption of constructive notice is destroyed, and the inference is, rather, that no communication was made. *Pom. Eq. Jur. 675.*

The president and cashier of this corporation had embarked in a joint enterprise with the executor of the estate of Mrs. Lord; the contract of copartnership contemplated a required capital of $2,500, and the case shows that this capital was to be provided by the mortgaging of the trust estate, for an unlawful purpose, to the knowledge of all the parties, the fraudulent act of the executor being the making of the mortgage for the purpose intended and of the bank officers in accepting it and advancing the money from the funds in their charge, with the intention of aiding in the misapplication of a trust fund to further a transaction in which they were interested, having no connection with the business of their principal. It was a fraud from its inception, not only against the trust estate, but against the trust company. The president and cashier of the trust company, as members of the copartnership, were dealing with the institution of which they were the managing officers. In their own interest they were contracting with themselves, as representatives of the trust company, to advance money on a mortgage made by the trustee to the trust company which they intended to misapply, or aid in so doing, and their interest in the matter was so opposed to the interest of their principal that knowledge of their wrong-doing cannot be equitably imputed to their principal. In addition to the general rule that the presumption of constructive notice is overcome when the essential element in the successfully carrying out of the agent's fraud is the concealment of facts from the principal, the knowledge of which might render the principal liable, we have the rule, well settled in this state, that where an officer deals with a corporation, in a matter in which his interest is opposed to that of the corporation, he does not, in such transaction, represent the corporation so as to impute his knowledge to his principal. In *De Kay* v. *Hackensack Company, 38 N. J. Eq. (11 Stew.)*

*158*, and in *Barnes* v. *Trenton Gas Co., 27 N. J. Eq. (12 C. E. Gr.) 33*, the court said that "when the agent's interests are opposed to those of his principal the presumption is, not that he will communicate his knowledge, but that he will conceal it."

My conclusion is that the infirmities attaching to the mortgage for $2,500 did not come to the knowledge of the trust company, so as to make it chargeable therewith, and that consequently the complainant is entitled to a decree in that suit.

As to the mortgage of June 4th, 1901, for $1,500, the situation is different. In this case it appears that the money went to the credit of Mr. Lord as executor, and that he drew against that account different sums, some of which went into the business of buying hogs; but it was an active account, with entries on each side, many deposits coming from the sales of hogs, so that it is impossible, from the evidence, to say that the $1,500 was, to the knowledge of the president or other officers of the trust company, applied in any other way than the balances in the account had been used and applied for many years.

Mr. Lord had for a long time, and, as far as the evidence shows, since the death of his wife, transacted all his bank business in his name as executor, and I am not satisfied, from the evidence, that the character of the use made of the moneys drawn from this account, if unlawful, was brought to the knowledge of the officers of the trust company.

I will advise a decree for the complainant in each of the three cases.