The sole question involved in this case is whether a certain judgment in favor of the defendant G.L. Strobeck *Page 270 
and against the Cogswell State Bank of Cogswell, North Dakota, became and is a lien on certain real property owned by the bank.
The material facts were stipulated and are thus concisely stated in the memorandum opinion of the trial court:
"Formerly, Cogswell State Bank was a banking corporation in business at Cogswell. It became insolvent, was closed and on January 6th, 1922, K.C. Nelson was appointed receiver, by the banking department; he was succeeded by H.A. Soule receiver under appointment by the district court on April 21st, 1923; he was succeeded by plaintiff October 6th, 1923.
Prior to September 22d 1919, title to N.E. 11-130-57 came to the bank and on that day, for its convenience, it conveyed the land to A. Rossberg, but the bank was at all times the beneficial owner of the land, Rossberg holding the naked legal title for the bank's benefit and subject to its control.
August 25th, 1924, Rossberg, by quit claim deed, conveyed the legal title to the land to the plaintiff, Baird.
July 18th, 1922, after the bank was in the hands of the departmental receiver, defendant Strobeck obtained a judgment against one Shannon and the bank for some $1,600 which was properly docketed. A claim for the amount of this judgment has been filed by defendant with the receivers, has not been allowed and not paid.
This action is brought to determine adverse claims and quiet title to the land.
The defendant claims that he has a valid lien, by virtue of his judgment, upon the land, and the plaintiff cannot avoid that lien without paying it.
The plaintiff claims that the defendant has no lien and never had any lien on this specific land, for three reasons:
1. The lien of a judgment upon land, is, in the first instance, dependent upon the judgment's being one which can be enforced by execution; and, as our statutes exempt all state banks from the legal processes of attachment and execution, no lien arose or attached.
2. No lien was created by or arose from the judgment because the judgment debtor did not have the record title to the land when it was docketed, and has not had it since, and judgments attach to specific *Page 271 
lands as liens only as against the record title, and not to the equitable title, even though that be the full beneficial title.
3. No lien attached to this land, because, when the judgment was docketed, the bank was in the hands of a receiver, who was not a party to the action in which the judgment was rendered, and title to the land, such as the bank may have had theretofore, whatever it may have been, was then taken away from it and vested in the receiver."
The trial court ruled that plaintiff's first contention must be sustained and, hence, did not consider the second and third contentions. After careful consideration of the question, we reach the same conclusion as did the trial court. Judgment liens are creatures of the statute. The existence, character and extent of such liens are dependent upon the will of the legislature as expressed in the law. 1 Black, Judgm. 2d ed. ¶¶ 398 et seq.; 2 Freeman, Judgm. 5th ed. ¶¶ 916 et seq.
Our statute (Comp. Laws 1913, § 7691) provides: "On filing a judgment directing in whole or in part the payment of money, it may be docketed with the clerk of the court, in which it was rendered, . . . and it shall be a lien on all the real property except the homestead in the county where the same is so docketed of every person against whom any such judgment shall be rendered, which he may have at the time of the docketing thereof in the county in which such real property is situated or which he shall acquire at any time thereafter, for ten years from the time of docketing the same. . . ." This provision is found in the Revised Code of Dakota Territory 1877, and has remained a part of the laws of this jurisdiction since its enactment.
In 1905 the legislative assembly, in an act relating to banks and banking and providing for the organization, management, control, regulation and supervision of banking corporations, provided:
"Every banking corporation in this state shall be exempt from the legal process of attachment and execution. But if any bank fails, neglects or refuses to pay any valid final judgment or decree that may be rendered against it by any court of competent jurisdiction, not properly stayed by an appeal bond within the time prescribed by statute or order of court after rendition thereof, the state banking board shall declare such bank insolvent or in failing circumstances and shall forthwith cause a receiver to be appointed to wind up its affairs." Laws 1905, chap. 165, § 39; Comp. Laws 1913, § 5188. *Page 272 
This provision has also remained a part of the laws of this state since its enactment. It will be noted that this section does not merely provide for a stay of execution for a certain period of time or until the happening of a certain contingency; it specifically exempts every banking corporation from execution. Hence, authorities dealing with the effect of a stay of execution upon the lien of a judgment have no application. The legislative mandate is that "every banking corporation in this state shall be exempt from . . . execution," but that "if any bank fails, neglects or refuses to pay any valid final judgment or decree that may be rendered against it by any court of competent jurisdiction, . . . the state banking board shall declare such bank insolvent or in failing circumstances and shall forthwith cause a receiver to be appointed to wind up its affairs." It will be noted that the legislature not only declared that all banking corporations should be exempt from execution; but it provided another remedy for the enforcement of judgments against such corporations — a remedy wholly unlike that provided for the enforcement of judgments against individuals or other corporations. It must be assumed that the legislature intended that the remedy thus provided should be exclusive. The necessary implication from the statute is that persons holding valid judgments against a bank, which are not paid, shall enforce the same only by presenting a claim therefor to the receiver appointed to wind up the affairs of the bank. There is nothing to indicate that the legislature intended that a judgment creditor should have a preference over other creditors. On the contrary, we think that one of the purposes of the statute was to preclude the possibility of any one creditor obtaining a preference over other creditors by means of legal proceedings against a bank in failing circumstances. It is a general rule that property exempt from execution is unaffected by judgment liens; and that a judgment which cannot be enforced against certain property is not a lien on such property. 15 R.C.L. 794, ¶ 249; 2 Freeman, Judgm. 5th ed. §§ 929, 930; 1 Black, Judgm. § 407; Hagen v. Chapman, 1 Penn. (Del.) 445, 41 A. 974.
Freeman (2 Freeman, Judgm. 5th ed. §§ 929, 930) says:
"Because the lien of a judgment is inseparably associated with an elegit or with the right to take lands in execution, it follows that there can be no lien except upon such judgments as the plaintiff is entitled to satisfy by levy upon the lands of the debtor." § 929. *Page 273 
"As heretofore stated, the lien of a judgment is a consequence of the right to sell real property for its satisfaction, and whenever that right is conceded, the existence of the lien is generally admitted, and whenever that right is denied, the existence of the lien is also denied, even under a statute making judgments a lien upon all the property of the debtor both real and personal. Decrees for a definite sum of money, and capable of being enforced by execution, are therefore liens upon real estate. But judgments upon which no execution may issue, as judgments against a state or a municipal corporation, create no liens, and judgments upon which the right to issue execution has terminated cease to be liens. So while judgment liens are recognized and often enforced in equity, it will not respect nor enforce them if they have ceased to be enforceable at law.
But it is to be noted that while dependent upon the right to execution, the actual issuance or levy of an execution is not essential to the existence of a judgment lien as distinguished from the lien of the execution itself, though a prior levy may result in a priority. Statutes may, however, require the issuance of execution within a specified time in order that the lien may be good as to intervening purchasers or encumbrancers, or may terminate the lien if no execution has issued within a prescribed period. And the fact that the statutory period of the life of the lien has expired does not prevent the enforcement of the judgment by execution if it is not dormant." § 930.
In our opinion a judgment against a bank, directing the payment of money, does not become a lien upon the real property of the bank; and the remedy provided by § 5188, supra, for the enforcement of such judgment is exclusive.
It follows that the judgment appealed from is correct, and must be affirmed. It is so ordered.
NUESSLE, BIRDZELL, BURKE, and JOHNSON, JJ., concur. *Page 274