L. R. BAIRD, as Receiver of Williams County State Bank, a Corporation, Respondent, v. FIRST NATIONAL BANK of WILLISTON, a Corporation, Appellant.

(— A.L.R. —, 215 N. W. 810.)

**Corporations — preferred creditors — corporations and individuals.**

1. Section 7218 of the Compiled Laws of 1913, which provides that a debtor may pay or secure one creditor in preference to another, is held to be a codification of the common law and to be applicable alike to corporations and individuals.

**Corporations — right to prefer creditors depends on charter and regulations.**

2. Where a corporation is chartered for the purpose of transacting a particular business under strict regulations, and where the right to transact such business is denied to individuals, associations and other corporations, the right of a corporation, so chartered, to prefer creditors depends upon the intention of the legislature as disclosed by the charter provisions and the regulations for the conduct of the business.

**Banks and banking — insolvent bank — no right to prefer creditors.**

3. It is held, for reasons stated in the opinion, that the *right* to prefer creditors is not given to an insolvent banking corporation.

Opinion filed October 17, 1927.

Banks and Banking, 7 C. J. § 511 p. 738 n. 15.    Corporations, 14a C. J. § 3091 p 909 n 62; § 3092 p 911 n 68 New.

Appeal from the District Court of Williams County; *Moellring, J.* Affirmed.

*Owens & Nelson,* for appellant.

"Whenever one person by contract or by law is liable and bound to pay another an amount of money, certain or uncertain, the relationship of debtor and creditor exists between them." 18 C. J. 24.

"A debtor includes corporations, general partnerships, and individuals." John Miller Co. v. Harvey Mercantile Co. 38 N. D. 531, 165 N. W. 558.

It is an elementary rule of law governing fraudulent conveyances

Note.—(1, 2) On right of corporation to prefer creditors, see annotation in 19 A.L.R. 320; 38 A.L.R. 90; 48 A.L.R. 479; 3 R. C. L. 645; 1 R. C. L. Supp. 873.

that a person who receives property from an insolvent debtor in payment of an antecedent debt occupies a more favorable position than a purchaser for a present consideration. 27 C. J. 630 and cases cited; Sutherland v. Noggle, 35 N. D. 538, 160 N. W. 1000.

They (the statutes of North Dakota) apply, in short, only after the aid of the courts has been sought to effect the dissolution; and they do not prior to such time, "either in express terms or by implication, place any restraint upon the right of creditors to pursue any other remedies afforded them by the law, nor [do they] undertake to prevent them from acquiring preferences in any manner or to any extent allowed by the law in the case of natural persons." Billmyer Lumber Co. v. Merchants Coal Co. 66 W. Va. 696, 26 L.R.A.(N.S.) 1101, 66 S. E. 1073.

*Usher L. Burdick,* for respondent.

"A claimant must show by presumptive or positive proof that he is entitled to the preference claimed." Stilson v. First State Bank (Iowa) 129 N. W. 70.

"One who holds a check or draft on a bank which becomes insolvent before such check or draft is paid is not entitled to any preference over other creditors." Jewett v. Yardley, 2 L.R.A.(N.S.) 83, 81 Fed. 920.

"A preferential deed of trust executed by a private trading corporation after its insolvency and ceasing to carry on business without any intention of resuming is void against unsecured creditors of the corporation." Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co. (Tex.) 22 L.R.A. 802.

As between creditors of an insolvent bank, equality is equity; and the law and sound public policy will not favor preference. Sturgis v. Meade County, 38 S. D. 317, 161 N. W. 327.

When the insolvent corporation is a bank, statutory provisions relating to the liquidation of the affairs of banks are controlling, and other insolvent laws and statutory methods of dissolving corporations must yield to them. Valley Bank v. Malcom (Ariz.) 204 Pac. 207.

"A conveyance of property by a debtor, not made in good faith, but executed by the grantor and received by the grantee with intent to defraud creditors, is not relieved from the condemnation of the statute

by the fact it was given for a valuable consideration or to pay an honest debt." Salemonson v. Thompson, 13 N. D. 182, 101 N. W. 320.

BIRDZELL, Ch. J. This is an appeal from an order overruling a demurrer to the complaint. The plaintiff sues as receiver of the Williams County State Bank to recover of the defendant on account of an alleged preference obtained by the latter while the Williams County State Bank was insolvent. The facts, as taken from the complaint, may be briefly stated.

On June 11, 1923, the Williams County State Bank was operating as a going bank, although it was insolvent and had been insolvent for some time prior thereto. On that date it suspended business and ceased payments to depositors. It was not open to the public after 3:30 that day and permanently suspended business on the following day, June 12th. At the time the bank closed the defendant had in its possession drafts which it had previously received and accepted from the Williams County State Bank for clearances, which drafts amounted to $6,783.47. While these drafts were unpaid and after the permanent suspension of business by the Williams County State Bank, and while it was insolvent and known by the defendant to be insolvent, the defendant demanded and received of the officers and directors of the Williams County State Bank all the cash assets of the bank, consisting of silver, nickels and pennies, currency and miscellaneous checks to the total amount of $6,783.47, for which the defendant signed a receipt to evidence the holding of the money and checks "in escrow pending payment" of the drafts. The remaining allegations are to the effect that the defendant retains the assets so received; that it is a general creditor; that there are no remaining assets of any value and that the transfer was made for the purpose and with the intention of preferring the defendant's claims and constituted fraud upon the other creditors of the Williams County State Bank.

The question involved may be briefly stated thus: May an insolvent banking corporation prefer a creditor having knowledge of the insolvency and soliciting the preference?

This court has previously held that an individual debtor may prefer creditors. Cutter v. Pollock, 4 N. D. 205, 25 L.R.A. 377, 50 Am. St. Rep. 644, 59 N. W. 1062. The holding is based upon the statute,

§ 7218 of the Compiled Laws of 1913, which is declaratory of the common law. This statute makes no distinction between an individual debtor and a corporation debtor, and it is therefore held in this jurisdiction (and elsewhere under similar statutes) that a corporation may prefer a creditor. John Miller Co. v. Harvey Mercantile Co. 38 N. D. 531, 165 N. W. 558; Farmers State Bank v. Brown, 52 N. D. 806, 204 N. W. 673; Merchants Nat. Bank v. Armstrong, 54 N. D. 35, 208 N. W. 847; Merced Bank v. Ivett, 127 Cal. 134, 59 Pac. 393; Adams & W. Co. v. Deyette, 8 S. D. 119, 31 L.R.A. 497, 59 Am. St. Rep. 751, 65 N. W. 471; Sandwich Mfg. Co. v. Max, 5 S. D. 125, 24 L.R.A. 524, 58 N. W. 14; 14a C. J. p..909; 8 Fletcher, Cyc. Corp. § 5074. But in South Dakota, where the same rule is embodied in the civil code, it seems to be held that a corporation may not prefer its creditors to the extent that an individual may do so. Bank of Springfield v. Williams, 48 S. D. 529, 205 N. W. 221.

As applied to corporations, the statutory declaration that a debtor may pay or secure one creditor in preference to another (Comp. Laws 1913, § 7218) is necessarily inconsistent with the view that the assets of an insolvent corporation constitute a trust fund for all the creditors; for, if the assets constitute a trust fund for all creditors, their application to the claims of some of the creditors to the exclusion of others would involve a breach of the trust upon which they are held by the corporate officers. The previous decisions of this court, therefore, that a corporation may prefer creditors in effect constitute a denial of the trust fund doctrine, and we are not disposed in the consideration of this case to deviate from the principles heretofore applied.

The question before us, however, is not simply whether or not an individual or a corporation may prefer creditors. The question is whether or not a particular kind of corporation, namely, a bank, may prefer its creditors, and this question can not, in our opinion, be properly determined by reference alone to the codification of the common-law rule that permits an insolvent debtor to prefer a creditor. The statutes governing the incorporation, control and management of banks are, in our opinion, quite as important in determining the issue as the statutes codifying the common law with reference to the relations of debtor and creditor in general. If this legislation shows that a banking corporation is to exercise its franchise only in circumstances which

presuppose the ability of the bank to pay all its creditors, there can be no warrant for an inference that it has power to prefer creditors. The legislature has made a distinction between banking corporations and other corporations in the matter of permitting operations while insolvent. Section 7990 of the Compiled Laws of 1913, while authorizing an immediate action against an insolvent bank, recognizes by clear implication the right of an insolvent corporation to continue to exercise its charter powers in that it authorizes an action to be brought by the state to dissolve the corporation when it "has remained insolvent for at least a year." This distinction alone is significant when it is sought to base a preference on the exercise of a right belonging to the corporation.

A private corporation is a legal person and the doctrines of the substantive law are generally applicable alike to corporations and individuals, yet there have always been distinctions based both upon the artificial character of the corporate being and upon the particular type of corporate franchise. Upon the civil death of a corporation, says Kent (2 Kent, Com. § 307); "According to the old settled law of the land, where there is no special statute provision to the contrary, . . . all its real estate remaining unsold, reverts back to the original grantor and his heirs. The debts due to and from the corporation are all extinguished. Neither the stockholders, nor the directors or trustees of the corporation, can recover those debts, or be charged with them, in their natural capacity. All the personal estate of the corporation vests in the people, as succeeding to this right and prerogative of the crown at common law."

A note to the above text (Gould's 14th ed.) points out that, while this rule of the common law had become obsolete and odious, it *never was applied in England to insolvent or dissolved moneyed corporations;* that sound doctrine is that the capital and debts of banks and other moneyed corporations constitute a trust fund and pledge for the payment of creditors and stockholders and that a court of equity will lay hold of the fund and see that it is duly collected and applied. That Chancellor Kent's view coincides with the statement in the note is demonstrated by an opinion furnished by him bearing upon the question before the High Court of Errors and Appeals of the State of Mississippi in Nevitt v. Bank of Port Gibson, 6 Smedes & M. 513. I

quote from the opinion of Chancellor Kent, as there published, beginning at page 519: "By the legislative creation of a bank with its capital and organization, a fraud upon the public could not have been intended. The just intention of the charter must undoubtedly have been, that the capital authorized to be invested should constitute a trust fund for the benefit of depositors and bill-holders, who by the institution are considered to be invited and induced to place confidence in the bank and its powers and capital as requisite means for their security and indemnity. To permit the odious and obsolete doctrine of ancient date, before moneyed institutions were introduced, to be now applied on the dissolution of the bank, perhaps by its own mismanagement and abuse, so that all its assets were to be considered as dispersed to the wind, without any owner or power anywhere to collect and justly apply, would be a disgrace to any civilized state. But this cannot be supposed to take place; the improved and enlightened administration of equity jurisprudence in every part of our country have taught and established sounder and juster doctrines, and this is apparent in the legislative acts and in the decrees of the court of equity relative to insolvent and dissolved moneyed charters. The provisions in the 8th, 9th and 10th sections of the Mississippi act of July, 1843, is a striking instance of the prevalence and recognition of this spirit of justice. *There is not an instance in the English law, in which the funds of an insolvent or forfeited moneyed institution have been permitted to be abandoned, and creditors denied redress and payment out of them.*

"The capital stock of a bank," said Mr. Justice Story, in Wood v. Dummer, 3 Mason, 309, Fed. Cas. No. 17,944, "was a pledge or trust fund for the payment of debts contracted by the bank, and this was a principle, as he observed, plain in law, as well as in common sense, and creditors might follow that trust fund in the hands of any person having notice of the trust attached to it."

Whatever warrant there may be in the law for invoking a trust doctrine in determining the rights of creditors in the assets of a bank as distinguished from other corporations, it is certain that the plight of the unsecured creditors of a financial corporation makes a much stronger appeal for the application of such a doctrine than exists in the case of creditors of corporations in general. Indeed, the leading case establishing the trust fund doctrine was one in which creditors

sought to have set aside a prejudicial disposition of the assets of a bank. Wood v. Dummer, 3 Mason, 308, Fed. Cas. No. 17,944. In that case Judge Story said:

"It appears to me very clear upon general principles, as well as the legislative intention, that the capital stock of banks is to be deemed a pledge or trust fund for the payment of the debts contracted by the bank. The public, as well as the legislature, have always supposed this to be a fund appropriated for such purpose. The individual stockholders are not liable for the debts of the bank in their private capacities. The charter relieves them from personal responsibility, and substitutes the capital stock in its stead. Credit is universally given to this fund by the public, as the only means of repayment. During the existence of the corporation it is the sole property of the corporation, and can be applied only according to its charter, that is, as a fund for payment of its debts, upon the security of which it may discount and circulate notes. Why, otherwise, is any capital stock required by our charters? If the stock may, the next day after it is paid in, be withdrawn by the stockholders without payment of the debts of the corporation, why is its amount so studiously provided for, and its payment by the stockholders so diligently required? To me this point appears so plain upon principles of law, as well as common sense, that I cannot be brought into any doubt, that the charters of our banks make the capital stock a trust fund for the payment of all the debts of the corporation."

While it is largely upon the strength of the foregoing expression of this eminent jurist that later authorities evolved the trust fund doctrine applicable to the affairs of corporations in general, and which has given rise to so much controversy, it is proper, in our judgment, to emphasize here the fact that the expression was made with regard to a banking corporation. It refers to legislation particularly applicable to the business of banking. Though the doctrine of the case may have been wrenched from its setting and made to do duty not contemplated by its author, this fact should not detract from the authority of the case when considering a like situation. The subsequent history of the banking business makes the argument of Judge Story used a hundred years ago applicable with even greater force today.

At the time in January, 1866, when the territorial legislature codified

the rule of the common law that a debtor may pay or secure one creditor in preference to others, the business of banking was not regulated as it has been since that period. Private banks and bankers flourished. The business was open to any one who desired to engage in it and, so far as the early history of banking in the territory was concerned, if a corporation engaged in the business, it was not burdened with any additional regulations on that account. When the State Constitution was formed a section was inserted recognizing that as yet there was no general banking law. It was stated (§ 145) "*If* a general banking law be enacted, it shall provide," etc. Later when a general banking law was enacted (Laws 1890, chap. 23) it went to the extent of restricting the entire business of banking to the corporations that might be formed under the law, and the law was later sustained against the attack that it deprived citizens who were denied the right to engage in the business of personal liberty and of the equal protection of the laws. State ex rel. Goodsill v. Woodmansee, 1 N. D. 246, 11 L.R.A. 420, 46 N. W. 970. Certainly, in legislation depriving citizens, regardless of their ability and integrity, of the right to engage in a particular legitimate business, we must expect to find some advantages thought to be reciprocal, and these we do find in this instance to be regulations designed to safeguard the public against the consequences of disaster to a particular enterprise, as well as to the business as a whole. A minimum capital is required. § 6. The shareholder must sustain an added liability. § 18. The corporation may not be dissolved without an application to the district court nor without an examination by the public examiner. § 12. The capital must remain inviolate. § 15. A certain reserve must be maintained. The corporation must make statements to the public examining authorities, and its officers are subject to penalty for false statements. It must not receive deposits while insolvent and its officers doing so are made guilty of felony. Any violation of the provisions of the act works a forfeiture of the franchise warranting an *immediate* action for annulling the existence of the corporation. The purpose to protect the public and, particularly, the patrons against the consequences that generally follow in the wake of an insolvent bank is so clearly manifest throughout the law that we apprehend it would not be disputed that an insolvent banking corporation has no right to continue to engage in the business for which it is chartered. Its fran-

chise is forfeited ipso facto upon insolvency although legal proceedings may be necessary to determine the facts; meanwhile the Public Examiner may be in charge. Comp. Laws 1913, § 5183. Indeed, the purpose to protect creditors is so evident that this court has held, in obedience to a legislative intention implied from the general act, that individuals are liable at the suit of a receiver upon paper given for the accommodation of a bank and to deceive the examiner when there would ordinarily be no liability to the accommodated party (Vallely v. Devaney, 49 N. D. 1107, 194 N. W. 903); also, that a bank may not pledge its assets as collateral security for a deposit. Divide County v. Baird, ante, 45, 51 A.L.R. 296, 212 N. W. 236. Section 7218, Compiled Laws of 1913, if applicable, would have compelled a different result, for it authorizes preferences through security as well as through payment. Preferences through the act of the creditor alone, by obtaining judgment and levy of execution, are precluded. Comp. Laws 1913, § 5188; Baird v. Strobeck, 54 N. D. 268, 209 N. W. 348. In that case it was said (54 N. D. 272):

"There is nothing to indicate that the legislature intended that a judgment creditor should have a preference over other creditors. On the contrary, we think that one of the purposes of the statute was to preclude the possibility of any one creditor obtaining a preference over other creditors by means of legal proceedings against a bank in failing circumstances."

When an action is brought by the state, under § 7990 of the Compiled Laws of 1913, to dissolve a banking corporation an injunction may be obtained pending the suit restraining the corporation, its trustees, directors, managers and other officers from paying out, transferring or delivering to any person any money, property or effects of the corporation, except by express permission of the court. Comp. Laws 1913; § 7992. The law further authorizes the examiner to take immediate charge of an insolvent bank, even before any action is brought looking to the dissolution of the corporation. Supplement to Comp. Laws 1913, § 5189. These provisions are clearly in derogation of the claimed *right* of an insolvent banking corporation to prefer its creditors. We are of the opinion that the legislation dealing with the charters of banks and with the regulations under which the business may be conducted says, with an emphasis stronger than would attach to the literal declara-

tion itself, that the business of banking must be carried on only by solvent institutions and that the moment insolvency occurs and danger of loss arises the officers entrusted with the affairs of the institution must cease to transact the business of the bank. It says to the public, "You may transact your business with a bank with the assurance that the bank is solvent and will be able to fulfill its engagements, and in the event of insolvency you will receive the same consideration as every other creditor not previously secured."

It is argued to the contrary that the banking law specifically prohibits and penalizes the receipt of deposits by a closed bank and that the failure to make similar provision prohibiting preferences indicates a purpose to permit an insolvent bank to deal with its creditors as any private corporation. It is further suggested that the failure to incorporate in the general banking law the provisions of § 91 of the National Banking Act (Rev. Stat. § 5242) prohibiting preferences —the National Banking Act being the source from which our general banking law was derived—is a further indication that insolvent banking corporations were not to be restricted in dealing with their creditors. In our opinion these contentions are untenable. It is unthinkable that the legislature would make an officer of a bank guilty of a felony for receiving money on deposit from an individual reposing confidence in the ostensible solvency of the institution, and at the same time permit the same officer to pay out all of the assets of the bank to such depositors as he could favor before being locked out of the institution by the public authorities. When a bank ceases to receive deposits it ceases to function as a bank and, when the condition arises in which the legislature has said that the further receipt of deposits by the officers in control shall make them guilty of felony, the legislative voice likewise, in effect, commands the activities of the corporation to cease. The failure, therefore, to penalize an attempted preference is, in our opinion, of no particular significance, and the omission of such a penal provision affords little or no basis for an inference that preferences are permitted.

Neither, in our opinion, does the failure to incorporate in our general banking act the provisions of § 91 of the National Banking Act (Rev. Stat. § 5242) prohibiting preferences afford any substantial basis for an inference that preferences are permitted. Our banking

55 N. Dak.—55.

act is not a copy of the National Banking Act; it is merely adapted from it. The National Banking Act contains a number of provisions that were not copied into our law. The reasons for the omission are more obvious in some instances than in others, and, before the failure to incorporate a particular provision is taken to indicate that the legislature desired a contrary rule to apply, the non-existence of other substantial reasons for the omission should be demonstrated. We shall not undertake to indicate all of the reasons for the omission from our law of § 91 of the National Banking Act (Rev. Stat. § 5242), but it seems to us that there is no one outstanding reason which alone may account for the omission. There is at least one other apparent reason. This section of the National Banking Act, while prohibiting preferences, contains an express exception in favor of the holders of circulating notes. Section 145 of the State Constitution contains mandatory language requiring the legislature, if it enact a general banking law, to include a provision for the registry and countersigning of notes and bills designed for circulation and for depositing security therefor with the state treasurer. The banking act adopted in 1890 contains no reference whatsoever to notes and bills designed for circulation and, consequently, contains no provision for registry, countersigning or security. On this account alone it might well have been deemed desirable to omit from the act any section of the National Act containing provisions applicable to notes and bills. We are satisfied that the provisions of the State Act prescribing regulations under which the business is to be carried on, forfeiting the charter for violation of its provisions and commanding the cessation of one of the most essential functions of banking upon insolvency, and the provisions authorizing the examiner to take charge and demand immediate action to annul the charter, negative the power of such corporations to prefer creditors. This does not mean, of course, that creditors or depositors who have been paid in the ordinary course of business, but while the bank was actually insolvent, are in all cases subject to suit by the receiver to recover back. Even under the National Banking Act creditors are not in all circumstances compelled to surrender such advantage gained in good faith. See McDonald v. Chemical Nat. Bank, 174 U. S. 610, 43 L. ed. 1106, 19 Sup. Ct. Rep. 787; Yardley v. Philler, 167 U. S.

344, 42 L. ed. 192, 17 Sup. Ct. Rep. 835; Hayes v. Beardsley, 136 N. Y. 299, 32 N. E. 855.

We are aware that in the case of Merced Bank v. Ivett, 127 Cal. 134, 59 Pac. 393, the Supreme Court of California reached the conclusion that the general statute permitting debtors to prefer creditors was applicable to banks; but we note, also, that the opposite conclusion was reached in South Dakota in Bank of Springfield v. Williams, 48 S. D. 529, 205 N. W. 221. An examination of the California statutes will disclose, however, that at the time of the decision in the above case there was no separate law for the organization of banking corporations, nor any comprehensive act regulating the business such as has existed in this state since 1890. See Pomeroy's Civil Code, 1901, Division 1, part IV. title 1, chap. 1–3. On this account there may have been in California little or no basis for the distinctions pointed out in this opinion between the exercise of a corporate franchise by banking and other corporations.

We are of the opinion that the complaint states a cause of action and that the demurrer was properly overruled. Order affirmed.

BURKE, CHRISTIANSON, BURR and NUESSLE, JJ., concur.