L. R. BAIRD, as Receiver of the First State Bank of Velva, North Dakota, Respondent, v. OSCAR ANDERSON, et al., Appellants.

(235 N. W. 150.)

Opinion filed February 18, 1931.

*E. R. Sinkler* and *G. O. Brekke,* for appellants.

*Conmy, Young & Burnett,* for respondent.

BURR, J. The defendants are holders of stock in the First State Bank of Velva, declared by the district court of Burleigh county to be an insolvent bank and placed in charge of the plaintiff as general receiver.

The complaint states the number of shares of stock held by each defendant, the amount of the debts of the bank, the face value of its assets, the inability of the bank to pay its debts "without resorting to the added statutory stockholders' liability prescribed by law," that the district court duly levied an assessment against each stockholder for the full amount of their liability, and that the defendants refuse to pay. It then asks that the amount of the debts of the defunct bank be ascertained, that the court determine the amount necessary to be

collected from each stockholder, and that plaintiff have judgment against each of the defendants for the amount so ascertained.

The defendants admit they purchased the stock, but claim they were induced to do this because of false and fraudulent representations made to them at that time by officers of the bank with the purpose of inducing them to purchase the stock, that they relied upon these statements were cheated and defrauded, and that long prior to the commencement of the action they discovered the fraud, notified the bank of rescission of the contract and offered to restore all the consideration given for the purchase of the stock.

The case was tried to the court and the findings of fact show the bank was closed on the 15th day of October, 1925; that the defendants herein were at that time shareholders of the bank; "that the contracts, debts and engagements of said bank were in excess of the sum of $138,-000 together with interest," that the actual value of the assets is less than the amount of debts and that the bank is unable to pay its debts "without resorting to the added statutory stockholders' liability prescribed by law" and that each of the shareholders is indebted to the plaintiff "to the extent of the amount of his stock therein, at the par value thereof." Judgment was entered accordingly and the defendants appeal, demanding a trial de novo.

The matter is one purely of fact. The evidence shows conclusively that the liabilities of the bank far exceed the actual value of its assets. In addition it is evident from the testimony that after the defendants became stockholders of the bank and the stock of the bank was transferred to them on the books of the bank, new accounts were opened, fresh deposits made and new liabilities incurred by the bank, all in excess of the amount of the stock held by the defendants. We find also the total face value of the stock held by the defendants is insufficient to pay the debts in full. Therefore, unless defendants can substantiate the charge of fraud and unless such fraud be a sufficient defense, there can be no question as to the correctness of the judgment.

The contention of the defendants is that prior to April, 1924, the Bankers' Investment Co. owned stock in the First State Bank and that an agreement was entered into between this Investment Company and the president of the bank to the effect that the Investment Company would turn back to the bank all of its stock and take out of the

bank in exchange therefor "absolutely worthless paper;" that the president of the bank then sold this stock to the defendants upon representation that the bank was a solvent and going concern and the stock was worth $100 per share, etc.; that at that time the bank was insolvent, that it carried on its books an excessive amount of real estate and that the securities represented thereby consisted of second mortgages and equities practically worthless; that they did not discover the fraud until after the bank had been taken over by the plaintiff and thereafter they checked over the accounts of the bank, and tendered back to the president of the insolvent institution and to the plaintiff the stock received and thus rescinded the contract of purchase.

It will be noted that this attempt to rescind the purchase of the stock did not take place until a year and a half after the purchase, and that during all of this time defendants were the reputed shareholders of the bank, with access to the books and with ample opportunity to ascertain the financial condition of the bank. Thus even if the allegations of the defendants be correct they were negligent in the protection of their own interest.

However the evidence in regard to fraud and fraudulent representations is sharply contradicted. The memorandum opinion of the court shows the court was of the opinion there was fraud on the part of the officials of the bank in the sale of the stock to the defendants, but that the court was not satisfied that the defendants had bought the stock from the bank as the bank did not own the stock in a legal sense at any time during the transaction. Whatever may have been the personal opinion of the trial judge on these matters it is not incorporated in the findings of fact or the judgment. There is no finding of fraud, nor that the defendants had bought this stock from the bank itself.

The principal claim of fraud rests upon the alleged insolvent condition of the bank at the time of the sale. The defendants have attempted to prove the bank was insolvent at that time, and that the president of the bank who negotiated the sale knew it. The burden of proof rests upon the defendants to show fraud, for the same is not to be presumed. Steinbach v. Bauclair, 38 N. D. 223, 164 N. W. 672. We can not say this burden has been sustained.

Again, when we consider also the incurring of fresh liabilities on the part of the bank after the entrance therein of those who are claim-

ing the right to rescind, it is clear the defendants cannot escape liability, otherwise as creditors of the bank they would have a preference, and such right of preference cannot be permitted to an insolvent bank. Baird v. First Nat. Bank, 55 N. D. 856, 56 A.L.R. 200, 215 N. W. 810. See also Schwarz v. Bowler Mfg. Co. 177 Ill. App. 294. As said in Farmers' State Bank v. Empey, 35 S. D. 107, 150 N. W. 936:

"When one becomes a stockholder in an insolvent bank through fraudulent representations, she must look to the seller of the stock for redress and is estopped to deny, as against creditors, her statutory liability as stockholder, if she was such at the time the bank became indebted to the creditors."

It is clearly against the principles of equity to permit those holding themselves out as stockholders in a bank to deny liability upon the shares of stock held by them, as against the claims of other creditors who dealt with the bank in reliance upon these very same stockholders. As between these stockholders on the one hand and the creditors on the other the latter must be preferred. The plaintiff represents these depositors and creditors as well as the stockholders. It is true he takes the estate of the insolvent for the benefit of the creditors and stands in the shoes of the insolvent with the same rights and obligations as at the time of the insolvency as we held in the case of Gilbertson v. Northern Trust Co. 53 N. D. 502, 42 A.L.R. 1353, 207 N. W. 42; and in Williston v. Ludowese, 53 N. D. 797, 807, 208 N. W. 82—cases relied upon by the defendants—and if the only controversy were between the bank and these defendants they might not be estopped. But as the receiver represents the creditors the principles set forth in Vallely v. Devaney, 49 N. D. 1107, 194 N. W. 903, apply with compelling force. The defendants were stockholders for a year and a half, with ample opportunity to ascertain the condition of the bank if they so desired. Hence their equity cannot be superior to the right of subsequent creditors. Defendants cite Rathbun v. Goldman, 164 Minn. 507, 205 N. W. 436, as authority permitting them to escape liability, but the court in that case says with reference to the right of a stockholder "induced to take stock in a corporation by reason of false and fraudulent representation of an officer" of an insolvent bank:

"The rule is well settled that the defendant cannot escape liability by the mere showing that he was induced to subscribe for his stock by

reason of a fraud perpetrated by the corporation. After the corporation has become insolvent, and a receiver has been appointed, the rights of creditors would be affected if the defendant were permitted to assert the fraud of the corporation as a bar to the proceeding to enforce his liability as a stockholder, and the cases cited hold that to escape liability the defendant must have exercised a high degree of diligence to ascertain the facts and rescind the subscription for the stock, or the contract for the sale thereof, before the rights of creditors have intervened."

The judgment for defendant, in the case cited, is predicated upon the situation that there was no laches on his part. There was an express finding to this effect.

After an examination of all of the evidence in the case it is clear that the defendants are indebted to the bank to the extent of the judgments rendered against them severally, and therefore the judgment of the lower court is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL, and BURKE, JJ., concur.