[File No. 6218.]

L. R. BAIRD, as Receiver of the Farmers and Merchants Bank, Hurdsfield, North Dakota, Respondent, v. J. C. REINERTSON, Con Sellie, H. Ingvaldson and First National Bank of Fessenden, North Dakota, a Corporation, Appellants.

(253 N. W. 159.)

Opinion filed January 30, 1934.· Rehearing denied March 10, 1934.

*Lawrence, Murphy, Fuller & Powers,* for appellants.

446

*Zuger & Tillotson,* for respondent.

BURKE, J. On the 13th day of October, 1930, the Merchants Bank at Hurdsfield, North Dakota, passed into the hands of the plaintiff, as receiver. J. E. Rand was put in charge of the liquidation of said bank and was steadily employed there at until the 28th day of November, 1932, at the time of the trial. The books of said bank showed an entry, on October 2, 1930, of a deposit of $9,185.39 in the First National Bank of Fessenden, North Dakota, to the credit of the said Merchants Bank at Hurdsfield. The only withdrawal of said deposit, as shown by the books of the Hurdsfield Bank, is the sum of $17.35. Demand was made upon the First National Bank, by the receiver, for the payment of said deposit and the correspondence which followed, between the receiver and the First National Bank, shows a demand for payment and a payment of $17.35.

After demand, the receiver brought this action, alleging in substance, that on the 2nd day of October, 1930, the Farmers and Merchants Bank of Hurdsfield, North Dakota, sold to the defendants notes, describing them, of the total value of $9,185.39; that the defendants had not paid for the said notes, except the sum of $17.35 and demanding judgment for $9,168.04. The First National Bank, for its separate answer, denies every allegation in the complaint, except the formal allegations relating to the incorporation of the corporate parties. The other defendants admit that the defendants, Sellie and Ingvaldson, purchased from the Farmers and Merchants Bank of Hurdsfield, on or about October 2nd, 1930, the said notes and allege payment of the same.

The trial judge made findings of fact and conclusions of law favorable to the plaintiff and from judgment duly entered thereon the defendants appeal.

The defendant Reinertson was president of the Hurdsfield bank. Ingvaldson was president of the First National Bank of Fessenden and Ingvaldson and Sellie were sureties on a depository bond to secure county deposits in the Merchants Bank of Hurdsfield. The bond was about to expire in the fall of 1930 and Ingvaldson and Sellie were requested to execute another bond to secure the deposits for said bank.

Ingvaldson was resigning his position, as president of the First National Bank of Fessenden, to accept a position in Minneapolis and refused to execute another bond, but told Reinertson that he would select and buy enough paper from him so that Reinertson could pay off the county. Reinertson agreed to this and Ingvaldson and Sellie checked over and selected notes of the face value of $9,185.39 for which it was agreed they would pay $9,000.00. Reinertson did not know the exact amount of the county deposits in the Hurdsfield bank at that time and he signed a check in blank on the First National Bank of Fessenden and authorized Ingvaldson to take the check to the county treasurer at Fessenden and have him fill in the amount of the county deposits and then turn the check over to the county treasurer in payment of the deposits. After the deal was made Sellie signed a receipt for the notes, took them and delivered them to Ingvaldson at Fessenden at a later date. Ingvaldson took the check to the county treasurer's office and the county treasurer ascertained the amount of deposits in the Hurdsfield bank and filled out the check with the proper amount, for $8,856.23. Later the county treasurer presented another claim for $126.43, which was paid out of the same account, leaving a balance of $17.35, which was later paid and the account was closed. The money that went into this account was furnished by Ingvaldson and Sellie. Ingvaldson testified that it was made up by one draft for $5,000.00, one draft for $2,000.00 and a check for $2,000.00, which drafts and check he testified were the absolute property of Ingvaldson and Sellie. Ingvaldson was president of the First National Bank, but in this transaction he was acting for himself and for Sellie and not for the bank.

Sellie gave a receipt, exhibit 1, which reads as follows:

"Received of the Farmers & Merchants Bank, Hurdsfield, N. Dak. above described notes to be credited to its account in the First National Bank, Fessenden, N. Dak." In relation to this receipt Sellie testified: "I signed that exhibit. . . . I received these notes at the State Bank of Bowdon. . . . Q. Did you disclose to Mr. Ingvaldson what the nature of the receipt was that you had given to the Hurdsfield Bank? A. No, sir, I did not. Q. Did you request Mr. Ingvaldson to give credit to the Hurdsfield Bank for these notes? A. No explanation was made of what the deal was. . . . I did not. The

deal was made with Mr. Ingvaldson. I just carried the notes over to him. The deal was made prior to that time. . . . Absolutely between Mr. Ingvaldson and the bank."

Mr. Ingvaldson was not present when Sellie got the notes and signed the receipt. He knew nothing about the kind of receipt that Sellie gave. Neither did he know anything about the entry in the books of the Hurdsfield bank showing that on October 2, 1930 a deposit of $9,185.39 was made in the First National Bank of Fessenden to the credit of said Merchants Bank of Hurdsfield. There was no such deposit made on that date or at all in the First National Bank of Fessenden. The deposit was not made until October 13, 1930, and then it was not for $9,185.39, but for $9,000.00, the amount that Ingvaldson and Sellie paid for the notes. Doubtless the money was not deposited in the First National Bank of Fessenden to the credit of the Hurdsfield bank, for in such case the Hurdsfield bank could check against it, before the account with the county was settled and Ingvaldson was looking after his own deal, to be relieved from the depository bonds upon which he was liable and therefore no opportunity was given to the bank at Hurdsfield to use any of the money for any purpose, except the purpose for which it was intended, namely, to pay off the county deposits and relieve Ingvaldson and Sellie from the bonds. But, even if Ingvaldson knew about the receipt signed by Sellie and knew about the entry made in the Hurdsfield bank books that would not be knowledge to the First National Bank for in that deal he was not acting for the First National Bank but for himself and knowledge to an officer of a bank is not notice to the bank, except when such officer is acting for the bank.

It is the duty of a bank to pay only in accordance with depositor's order. Glassell Development Co. v. Citizens' Nat. Bank, 191 Cal. 375, 216 P. 1012, 28 A.L.R. 1427; Union Tool Co. v. Farmers' & M. Nat. Bank, 192 Cal. 40, 218 P. 424, 28 A.L.R. 1417; Boatsman v. Stockman's Nat. Bank, 56 Colo. 495, 138 P. 764, 50 L.R.A.(N.S.) 107. Obligation of bank absolute that it will pay only in manner directed by depositor. McCornack v. Central State Bank, 203 Iowa, 833, 211 N. W. 542, 52 A.L.R. 1297; Detroit Piston Ring Co. v. Wayne County & Home Sav. Bank, 252 Mich. 163, 233 N. W. 185, 75 A.L.R. 1273.

An oral order by a depositor to a bank to pay the deposit on checks drawn by a third person is sufficient to authorize the bank to make such payment. Pierson v. Union Bank & T. Co. 181 Ky. 749, 205 S. W. 906, 2 A.L.R. 172 and notes 175.

In the case of First Nat. Bank v. Bailey, 54 N. D. 534, at page 538, 210 N. W. 26, we said: "The test is that if the bank official is acting for the bank, his knowledge of the infirmity of the paper will be presumed to be the knowledge of the bank. . . . 'The rule seems to be that knowledge or notice upon the part of an officer or agent, with respect to discounts and securities, when such matters are within the scope of his duties or agency, are chargeable to the bank, and bind it in subsequent proceedings. But the rule cannot hold good when the officer is also acting in part for himself and in his own behalf. The bank whose president has knowledge of a defect in a guaranty on negotiable bonds at the time that it, acting through him, makes a loan thereon, is not charged with notice, he being a part owner in the bonds and the loan being in part for his benefit. The knowledge of an officer in a bank, being also a member of its discount committee, who takes part in discounting a note made to him individually, for an unlawful purpose, in which he participates, is not imputable to the bank.' " In this case the cases are collected and cited at length and need not be repeated here.

"By the contract of deposit, the bank undertakes to honor the checks which the depositor shall from time to time draw against his account; and is bound to honor the checks of its customer so long as he has funds on deposit to his credit. . . . For any breach of this agreement the bank is liable in an action by the depositor, which accrues at once upon the bank's failure to pay his check." Michie, Banks & Banking, § 137, p. 1079. The bank has no right, as against the drawer of a check, to do anything but to pay it. Cincinnati Oyster & Fish Co. v. National Lafayette Bank, 51 Ohio St. 106, 36 N. E. 833, 46 Am. St. Rep. 560.

In the case of Duckett v. National Mechanics' Bank, 86 Md. 400, 38 Atl. 983, 39 L.R.A. 84, 63 Am. St. Rep. 513, the court said: "It is true, undoubtedly, that bank is bound to honor the checks of its customer so long as he has funds on deposit to his credit, . . . It

is equally true that whenever money is placed in bank on deposit, and the bank's officers are unaware that the fund does not belong to the person depositing it, the bank, upon paying the fund out on the depositor's check, will be free from liability, even though it should afterwards turn out that the fund in reality belonged to some one else than the individual who deposited it. It is immaterial, so far as respects the duty of the bank to the depositor, in what capacity the depositor holds or possesses the fund which he places on deposit. The obligation of the bank is simply to keep the fund safely, and to return it to the proper person or to pay it to his order. If it be deposited by one as trustee, the depositor, as trustee, has the right to withdraw it, and the bank, in the absence of knowledge or notice to the contrary, would be bound to assume that the trustee would appropriate the money, when drawn, to a proper use. Any other rule would throw upon a bank the duty of inquiring as to the appropriation made of every fund deposited by a trustee or other like fiduciary; and the imposition of such a duty would practically put an end to the bank business, because no bank could possibly conduct business if, without fault on its part, it were held accountable for the misconduct or malversations of its depositors who occupy some fiduciary relation to the fund placed by them with the bank. In the absence of notice or knowledge, a bank cannot question the right of its customer to withdraw funds, nor refuse (except in the instances already noted), to honor his demands by check; and therefore, even though the deposit be to the customer's credit in trust, the bank is under no obligation to look after the appropriation of the trust funds when withdrawn, or to protect the trust by setting up a jus tertii against a demand. But if the bank has notice or knowledge that a breach of trust is being committed by an improper withdrawal of funds, or if it participates in the profits or fruits of the fund, then it will be undoubtedly liable. In support of these general principles, if support they need at all, we may refer to Munnerlyn v. Augusta Sav. Bank, 88 Ga. 333, 14 S. E. 554, 30 Am. St. Rep. 159; State Nat. Bank v. Reilly, 124 Ill. 464, 14 N. E. 657; Essex County v. Newark City Nat. Bank, 48 N. J. Eq. 51, 21 Atl. 185,—all cited in 3 Am. & Eng. Enc. Law, 2d ed. 833, 834; Walker v. Manhattan Bank (C. C.) 25 F. 255; 1 Morse, Banks, § 317; Swift v. Williams, 68 Md. 237, 11 Atl. 835.

"A deposit may be made for a specific purpose, as where money or property is delivered to the bank for some particular designated purpose, as a note for collection, money to pay a particular note or draft, etc. While such a deposit is sometimes termed a 'special deposit' and partakes of the nature of a special deposit to the extent that the title remains in the depositor and does not pass to the bank, yet it seems more accurate to look on this as a distinct class of deposit. In using deposits made for the purpose of having them applied to a particular purpose, the bank acts as the agent of the depositor, and, if it should fail to apply it at all, or should misapply it, it can be recovered as a trust deposit." 7 C. J. p. 631, § 307.

So in the instant case the deposit was not made until the check for the money ascertained to be due the bank was presented, then the deposit was made and charged with the amount of the check and a credit given to the county of the amount of the check. The First National Bank never had the notes and never got title to the special deposit made by Ingvaldson and Sellie, as the deposit and transfer were made at the same time and as authorized by Ingvaldson.

In the case of Brookhouse v. Union Pub. Co. 73 N. H. 368, 62 Atl. 219, 2 L.R.A.(N.S.) 993, at page 999, 111 Am. St. Rep. 623, 6 Ann. Cas. 675, the New Hampshire court said: "It is true that a principal is ordinarily chargeable with the knowledge acquired by his agent in executing the agency, and is subject to the liabilities which such knowledge imposes. But there is a well-established exception to this rule, by which the principal is not charged with the knowledge of his agent when the latter is engaged in 'committing an independent, fraudulent act on his own account, and the facts to be imputed relate to this fraudulent act.' Allen v. South Boston R. Co. 150 Mass. 200, 22 N. E. 917, 5 L.R.A. 716, 15 Am. St. Rep. 185; Indian Head Nat. Bank v. Clark, 166 Mass. 27, 43 N. E. 912; Produce Exch. Trust Co. v. Beiberbach, 176 Mass. 577, 588, 58 N. E. 162; Camden Safe Deposit & T. Co. v. Lord, 67 N. J. Eq. 489, 58 Atl. 607; Gunster v. Scranton Illuminating, H. & P. Co. 181 Pa. 327, 37 Atl. 550, 59 Am. St. Rep. 650; Frenkel v. Hudson, 82 Ala. 158, 2 So. 758, 60 Am. Rep. 736; American Surety Co. v. Pauly, 170 U. S. 133, 42 L. ed. 977, 18 S. Ct. 552; 2 Pom. Eq. Jur. 3d ed. § 675, and authorities cited in notes; 1 Am. & Eng. Enc. Law, 2d ed. p. 1145, and authorities cited in notes. This

exception was recognized in this state in Clark v. Marshall, 62 N. H. 498, 500." See also Emerado Farmers Elevator Co. v. Farmers Bank, 20 N. D. 270, 127 N. W. 522, 29 L.R.A.(N.S.) 567.

In the instant case Ingvaldson testified that the First National Bank did not furnish a penny in the Ingvaldson-Sellie account; that he got $5,000.00 of the amount from the First National Bank of Drake, and that the drafts and check deposited belonged to him and Sellie. The record shows that Ingvaldson was acting for himself, for Sellie, for the Hurdsfield Bank and for the County Treasurer. He was given the check, signed in blank, by the president of the Hurdsfield Bank and was authorized, by the Hurdsfield Bank, to have the check made out for the amount of the county deposit in the Hurdsfield Bank and to pay the check out of the proceeds of the notes. He was acting for himself, for Sellie and for the Hurdsfield Bank on the morning of the 13th of October, 1930, when he presented the check to the county treasurer, asking him to fill in the amount of the deposit and to present the check for payment at the First National Bank and have the deposit transferred from the Hurdsfield Bank to the First National Bank of Fessenden.

It is well settled that an insolvent bank may not prefer a depositor. Baird v. First Nat. Bank, 55 N. D. 856, 215 N. W. 810, 56 A.L.R. 200; Divide County v. Baird, 55 N. D. 45, 212 N. W. 236, 51 A.L.R. 296; Luikart v. Hunt, 124 Neb. 642, 247 N. W. 790.

The trial court found as a fact that on the 2nd day of October, 1930 and at all times since, the said Farmers and Merchants Bank, of Hurdsfield, North Dakota, was insolvent, and that while said bank was insolvent it sold and delivered to the defendants notes, claims and choses in action. The defendants agreed to pay $9,000.00 therefor; that on the 13th day of October, 1930 while the said Farmers and Merchants Bank of Hurdsfield was insolvent the defendants then and there knowing and having notice of such insolvency converted the sum of $8,856.23 from the said deposit for the purpose of paying and discharging a contingent liability of the defendants, Con Sellie and H. Ingvaldson and on the 25th day of October, 1930 and after the appointment of L. R. Baird, as receiver, the said defendants with full knowledge of the insolvency of said bank converted the sum of $126.00 for the purpose of paying and discharging a contingent liability.

There is some direct evidence in the record of the insolvency of the bank on the 2nd day of October, 1930 and the circumstantial evidence, showing that the bank was insolvent and a preference was intended, is very strong.

The county treasurer had notified Ingvaldson that the bond was about to expire and asked him to renew it. Ingvaldson said he would not renew, but he was making a deal to get some notes from the Hurdsfield Bank to pay it; then he went to Hurdsfield and made the deal with Reinertson, the president of the Hurdsfield Bank. They went through the notes and Ingvaldson states candidly that they picked out the best notes, aggregating $9,185.39, a large withdrawal from a small bank during a world-wide depression in business. The deal was quietly and secretly made. Reinertson, acting for the Hurdsfield Bank, said nothing about the transaction to the cashier; Ingvaldson said nothing to the officials of the First National Bank of Fessenden, except to pay the check, which Reinertson signed in blank, out of the deposit made by Ingvaldson on the 13th of October, to the credit of Ingvaldson and Sellie. Ingvaldson would not talk in the Treasurer's office about the deal and asked the Treasurer to take him into the vault where he explained the matter and had the amount of the deposits filled in the blank check. Ingvaldson told the Treasurer that he wanted him to cash the check as soon as possible and the Treasurer went to the bank with Ingvaldson at that time, cashed the check and deposited the proceeds to the credit of the county. This was in the forenoon of the 13th day of October, and at two o'clock in the afternoon of the same day the Hurdsfield Bank closed its doors for business and did not open again, but it did not close before the deal to relieve Ingvaldson and Sellie was completed. If the bank at Hurdsfield had been a sound institution the bondsmen would not have been so anxious to get off the bond and even if they did decide to retire the bond with cash, why did they not deposit the money in the Hurdsfield Bank and let the Hurdsfield Bank pay the deposit with its own draft, or furnish another bond and retain the deposit as a part of the assets of the bank? In this transaction there was no thought of taking care of the Hurdsfield Bank or its creditors. The plan was to relieve Ingvaldson and Sellie from liability on the bond, and hence it was so arranged that no money was available until the check was presented at the First

National Bank of Fessenden. In these circumstances Ingvaldson and Sellie could not help but know of the insolvency of the Hurdsfield Bank and the disposition of the notes was an illegal preference. The payment of the deposit to the county is a payment of part of the liabilities of the Hurdsfield Bank and since Ingvaldson and Sellie were liable on their depository bond they are subrogated to the rights of the county and entitled to their proportionate share of the dividends of the Hurdsfield Bank when it is liquidated.

The judgment of the court as to the First National Bank of Fessenden is reversed with costs and the judgment against the defendants, Reinertson, Sellie and Ingvaldson, is affirmed.

BURR, Ch. J., and NUESSLE, CHRISTIANSON and MOELLRING, JJ., concur.

BURKE, J. (On petition for rehearing.) The plaintiff filed a petition for rehearing in which he claims that the undisputed evidence shows that the bank paid the county treasurer, on the 25th day of October, 1930, by check, $126.42; that such payment was made twelve days after the closing of plaintiff's bank and five days after the appointment of the receiver of said bank. That the payment of $126.42 was drawn out of the fund by the defendant Ingvaldson and that it further appears from plaintiff's exhibit 4 that such payment was made after the date of the letter written by the receiver demanding that the First National Bank deliver over such funds to the receiver. It is true that the payment of $126.42 was made twelve days after the closing of the bank and five days after the appointment of a receiver, but counsel admits, in fact states in his petition, that the payment of the $126.42 was drawn out of the fund by the defendant Ingvaldson and we have already held that Ingvaldson was acting for himself and his knowledge was not the knowledge of the bank. There is absolutely no evidence that any of the officials of the bank, outside of Ingvaldson, knew anything about the deal which Ingvaldson had with the Hurdsfield Bank and exhibit 4, upon which petitioner relies, is a copy of a letter purported to have been written by the receiver of the bank of Hurdsfield on October 23, 1930. It was identified at the trial by the witness Myhre as a file in the office of the receiver but there is no evidence that

the original was ever mailed or that it was ever received by the First National Bank of Fessenden. It is dated October 23, 1930 and the check for $126.42, payable to the County Treasurer, is dated October 25, 1930.

Rehearing is denied.

BURR, Ch. J., and NUESSLE, CHRISTIANSON and MOELLRING, JJ., concur.